In re PRUDENTIAL SECURITIES IN-
CORPORATED LIMITED PART-
NERSHIPS LITIGATION.

MDL Docket No. 1005.
M–21–67 (MP).

United States District Court,
S.D. New York.

Jan. 24, 1996.

## OPINION AND DECISION

MILTON POLLACK, Senior District Judge.

This matter is before the Court on the Joint Fee Petition submitted by counsel for the plaintiffs and the Class in the above-captioned case. Plaintiffs' class counsel's efforts have resulted in the establishment of a $110,000,000 fund for the benefit of the Class.

On November 17, 1995, after notice to the Class and other interested persons, this Court held a fairness hearing on the proposed Stipulation and Agreement of Partial Compromise and Settlement dated August 9, 1995 (the "Settlement") and the Amended Plan of Allocation dated September 8, 1995 (the "Plan of Allocation") and on the Joint Fee Petition of plaintiffs' class counsel.

On November 20, 1995 this Court entered Findings of Fact and Conclusions of Law with respect to the Settlement and the Amended Plan of Allocation. On November 20, 1995 this Court also entered an Order and Final Judgment approving the Settlement relative to plaintiffs' and the Class's claims against the PSI (Prudential Securities Incorporated) Settling Defendants,[1] and an Order and Final Judgment Approving the Amended Plan of Allocation.

In the Joint Fee Petition, plaintiffs' class counsel[2] request attorneys' fees in the amount of $32,120,000, together with interest thereon at the same rate as that received by the settlement fund on deposit with the Court from the date of deposit until the date of payment. Plaintiffs' counsel also requested reimbursement of the out-of-pocket disbursements in the amount of $1,921,332.29, together with interest thereon at the same rate as that received by the settlement fund on deposit with the Court from the date of deposit until the date of payment. By reason of the findings of fact and conclusions of law set forth below, the Joint Petitioners' request for fees and disbursements is GRANTED, but only to the limit set forth hereafter.

Also before the Court at the November 17, 1995 hearing was an application for fees and expenses by the firm of Carlos Lidsky, Attorney At Law, P.A. Mr. Lidsky represented class member Anne Danziger, individually and as the personal representative of the Estate of Fanny Rottenberg, in an individual Florida action which was transferred to this Court as a related action by the Judicial Panel on Multidistrict Litigation, which action will be resolved as against the PSI Settling Defendants by the Settlement. Plaintiffs' class counsel initially objected to this fee request, but after Mr. Lidsky agreed at the hearing to reduce his firm's fee request to $25,000. plaintiffs' class counsel withdrew

---

1. The PSI Settling Defendants are: Prudential Securities Incorporated ("PSI"); Prudential Insurance Company of America, Prudential Securities Group, Inc., Prudential–Bache Capital Funding, Inc., Prudential–Bache Agriculture Inc., Prudential–Bache Energy Production, Inc., Prudential–Bache Leasing, Inc., Prudential–Bache Minerals, Inc., Prudential Realty Partners, Inc., R & D Funding Corp., Graham Resources, Inc., Graham Energy, Ltd., Graham Securities Corp., Graham Royalty, Ltd., Prudential–Bache Properties, Inc., George Ball, Robert Sherman, James Darr, William E. Pittman, Jr., James M. Kelso, Brian J. Martin, Frank W. Giordano, Joseph H. Quinn, Joe W. DeFur, Paul J. Proscia, Anthony J. Hertl, Frank Saraceno and John J. Graham.

2. Plaintiffs' class counsel included in the Joint Petition are the following firms: Milberg Weiss Bershad Hynes & Lerach; Goodkind Labaton Rudoff & Sucharow LLP; Bonnett, Fairbourn, Freidman & Balint, P.C.; Chimicles, Jacobson & Tikellis; Duker & Barrett; Finkelstein, Thompson & Loughran; Krislov & Associates, Ltd.; Miller Faucher Chertow Cafferty And Wexler; Aguirre & Meyer; Beigel Schy Lasky Rifkind Fertik & Gelber; Berger & Montague, P.C.; Cin, Shwagman & Wagner; Timothy J. Dennin, P.C.; Garwin, Bronzaft, Gerstein & Fisher, LLP; Miles J. Gopman, Esq.; Kantor Bernstein Kantor; Law Offices of Timothy C. Karen; Krause & Kaffayan; Krongold, Gottlieb & Goldbert, P.A.; Shockman & McKeegan; Strassberger McKenna Gutnick & Potter; Tew & Beasley; Law Offices of Curtiss V. Trinko; Weiss & Yourman; and, Zwerling, Schachter, Zwerling & Koppell, LLP.

their objection. The Court requested Mr. Lidsky to submit a supplemental affidavit to justify the payment of the $25,000. requested fee and expense amount.. An additional sufficient submission was served and filed by Mr. Lidsky on or about November 22, 1995. The application for fees and expenses by the firm of Carlos Lidsky, Attorney At Law, P.A. in the amount of $25,000 is accordingly GRANTED, and such sum is to be paid out of the award of fees and expenses to plaintiffs' class counsel on the Joint Petition.

A separate application filed by the firm of Miller Milove & Kob for Attorneys' fees, costs and expenses will be addressed in separate Findings of Fact and Conclusions of Law. For the reasons appearing therein, the said application is in all respects DENIED.

An application for fees by Mills, Mills, Fily & Lucas was withdrawn at the hearing and is in any event DENIED.

The firm of Hoadley & Noska, P.A. also filed a petition for fees and expenses, but its representative, Thomas A. Hoadley, left the hearing without presenting any sufficient support justifying his firm's application. Upon examination of the petition, the Court finds the application to be entirely unsubstantiated and lacking in merit as a claim against the Settlement Fund and it is entirely DENIED.

## BACKGROUND

After more than three years of litigation in various constituent actions and related state court proceedings, the plaintiffs' class counsel in this Multidistrict class action have reached an outstanding partial settlement resulting in a $110,000,000. recovery from the Settling Defendants. (The settlement is referred to as a partial one since not all of the named defendants are included among those who are Settling Defendants). Plaintiffs' class counsel are entitled to a reasonable fee to be paid out of the common fund which they created by this partial settlement.

Plaintiffs' class counsel undertook this complex and difficult litigation on a contingent basis. Not only was success and payment for counsels' efforts uncertain from the beginning of the Constituent Actions, but also the risks *increased* as the case progressed and PSI reached a separate settlement with the Securities and Exchange Commission ("SEC") of claims arising out of many of the same wrongful acts alleged by plaintiffs. Against increasing odds, plaintiffs succeeded in reaching an important and excellent additional settlement with the PSI Settling Defendants.

The Class Members have responded favorably to the settlement herein. Reports from the Claims Administrator retained by the Executive Committee of plaintiffs' counsel indicate that as of the date of the Settlement fairness hearing over 58,000 proofs of claim had already been filed by members of the Class for consideration under the terms of this Settlement.[3]

The record demonstrates that, in litigating the consolidated actions to this point and bringing about the partial settlement, the substantial number of plaintiffs' class counsel have performed 81,280.35 hours of, as yet, uncompensated work, which they value—at their current, ordinary, non-contingent billing rates for the attorneys and other professionals who performed the work—at $20,333,-296.25 (as adjusted).[4]

In the Compendium To The Joint Affidavit of Melvyn I. Weiss and Lawrence A. Sucha-

---

**3.** The Notice of Pendency of Class Action and Settlement Hearing, mailed to Class Members, advised that Class Counsel would request a fee not to exceed 30% of the Settlement fund. Only one objection to the requested attorney fees has been received, and it was untimely and improperly filed and is without any merit (addressed below). In determining the reasonableness of a requested fee, numerous courts have recognized that "[t]he lack of objection from members of the class is one of the most important factors." *General Public Util. Sec. Litig.*, [1983–84 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 99,566 at p. 97,-

231–32, 1983 WL 22362 (D.N.J. Nov. 16, 1983); *In re Art Materials Antitrust Litig.*, 1984–1 Trade Cas. (CCH) ¶ 65,815 at p. 67,417, 1983 WL 1947 (N.D.Ohio 1983); *Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D.Fla.1992).

**4.** The lodestar figure and requested expenses submitted to the Court reflect counsels' efforts through September 30, 1995. Time expended in connection with the request for attorneys' fees is not included in either the hours or lodestar figures.

row In Support of Request for Final Approval of the Partial Class Action Settlement and in Support of The Joint Petition of Plaintiffs' Counsel For an Award of Attorneys' Fees and Litigation Expenses (the "Compendium"), plaintiffs' class counsel have submitted affidavits from each of the law firms requesting the award of counsel fees in the Joint Petition. An attachment to each affidavit sets forth the number of attorney and paralegal hours claimed to have been thus far expended on this litigation by each individual at the firm involved, as well as the current non-contingent hourly rates charged by the firm for such services. The Court requested and received supplemental submissions from each firm to provide narrative descriptions of the services performed by each such firm individually to further illumine the descriptions in the Joint Affidavit.

Plaintiffs' counsel formed an Executive Committee in order to harness the extensive legal and financial talent represented by the representatives of those involved in the Class, and as specific needs arose, other committees to deal with the development of litigation strategies, drafting of the Consolidated Complaint, discovery, responding to motions and, when the opportunity arose, settlement negotiations. For efficiency, liaison counsel were also designated. Plaintiffs' counsel have worked together cooperatively under the supervision of the Executive Committee and, under its leadership, guidance and control, have allocated work in a manner designed to avoid wasteful duplication of activities.

Plaintiffs' class counsel also seek the reimbursement of the substantial costs and expenses incurred by them in the commencement and prosecution of the Constituent Actions as well as in the state court actions which provided the ground work and much of the difficult and complicated investigation and discovery which led up to the filing of the federal actions and the Consolidated Complaint and in which the claims against the PSI Settling Defendants will be resolved as to them as a result of the partial Settlement.

The record demonstrates that plaintiffs' class counsel were, occasionally, required to utilize the services of consultants and experts in analyzing the financial structure, marketing and operation of the partnerships involved in this litigation. Plaintiffs' class counsel also consulted with legal and financial experts in connection with the drafting of the consolidated complaint.

The expenses for which plaintiffs' class counsel seek reimbursement were originally set forth at the aggregate sum of $1,921,332.29. In reviewing such expenses the Court found that certain disbursements were charged to the case, the full cost of which should not be borne by the Class because there is residual value to the asset acquired. Thus, the Court has disallowed the expense of purchasing certain computers used for the discovery data base which purchase costs exceeded the lease costs for such computers for the time they were used for this case. The requested expense reimbursement was reduced as a result of this. The Court finds that the remaining expenses totalling $1,895,311.16 were appropriately incurred to date in connection with the prosecution of the action and were incurred by plaintiffs' counsel in order to properly represent the plaintiffs and the members of the Class.

## DISCUSSION

In considering the fairness of the fees requested pursuant to a lodestar and multiplier approach, courts frequently look to the factors enunciated by the Second Circuit in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir.1974). *See also In re Ames Department Stores, Inc.*, 835 F.Supp. 147, 150 (S.D.N.Y.1993) (Pollack, J.). ("The Court has broad discretion to adjust the lodestar to take account of such factors as: (i) the contingent nature of the expected compensation for their services; (ii) the consequent risk of non-payment viewed as of the time of filing the suit; (iii) the quality of the representation; and (iv) the results achieved.")

Among the factors considered by *Grinnell* is whether plaintiffs' counsel had the benefit of a prior judgment or decree in a case brought by the government. Here, plaintiffs not only did not have the benefit of such a judgment or decree, but the actions by the

government, by the Department of Justice and by the Securities and Exchange Commission were brought after plaintiffs had commenced their Constituent Actions and it is clear that the investigation and discovery undertaken by counsel for plaintiffs in those actions assisted the government in the preparation of its complaints and the SEC Order. Moreover, the settlement between the government and the PSI Settling Defendants actually made the prosecution and settlement of this action with the PSI Settling Defendants more difficult. Plaintiffs in the class proceedings herein obtained no benefits from any proceedings brought by the government.

A second factor considered in *Grinnell* is the standing of counsel at the bar—both counsel receiving the award and opposing counsel. As demonstrated by the firm resumes annexed as exhibits to the affidavits submitted by each of the plaintiffs' counsel who are seeking an award of fees herein, virtually all of the firms and attorneys who represented plaintiffs in this action have substantial experience in the areas of securities and investor protection litigation. The attorneys actively working on the case on behalf of the firms on the Executive Committee of plaintiffs' class counsel in and of themselves represent, in the aggregate, hundreds of years of experience in this field. The Court has had the opportunity at first hand to observe the quality of plaintiffs' class counsel's representation both here and in prior complex litigation, and is impressed with the quality of plaintiffs' class counsel as representing a caliber adequately fitted to the the difficult tasks faced in this unusual series of actions. The Court is also well aware of the reputation and expertise of opposing counsel with whom plaintiffs were confronted. They are among the most well respected, experienced and sophisticated firms in the country. The caliber of opposing counsel was clearly of the highest order and required that counsel for plaintiffs and the Class be capable of providing comparable services.

The amount of the partial settlement and the fact that the action involves over 700 limited partnerships make clear the magnitude of the litigation. That magnitude, in and of itself, is also an indication of the complexity. The complex allegations under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, and the proceedings to date, similarly demonstrate the complexity of this litigation.

The fifth factor discussed in *Grinnell* relates to the responsibility undertaken by counsel. Clearly, the magnitude and complexity of the action demonstrate the substantial responsibility undertaken here. The responsibility undertaken by counsel for the class action plaintiffs was enormous and, as the proposed Settlement demonstrates, was carried out by counsel for plaintiffs with an understanding of the importance of their efforts to plaintiffs and the members of the Class.

The sixth factor discussed in *Grinnell* is the amount recovered. The recovery of $110 million is a landmark and one of the largest recoveries ever obtained in a class action brought on behalf of investors.

The seventh factor discussed in *Grinnell* is the Court's knowledge of the quality and extent of the work product of plaintiffs' counsel evidenced in the myriad conferences attended by the Court and arguments and hearings and exposure to the work product submitted by counsel. The Court also became familiar with the settlement negotiations and the efforts and skill of plaintiffs' class counsel used to obtain the best possible settlement on behalf of plaintiffs and the members of the Class.

The eighth factor discussed by *Grinnell* is what it would be reasonable for counsel to charge a victorious plaintiff. The record demonstrates that, in connection with their claims against PSI and the PSI Settling Defendants, investors entered retainer agreements with private counsel which provided for a contingent fee ranging between 33⅓% and 40% of the amounts recovered.

The final factor discussed in *Grinnell* is the risk of litigation. The risk in this action was extremely high, in part, because of how long ago many of the partnerships at issue were sold. Other elements which added to the risk include the numerous defenses available to the defendants, and the possibility that, after the PSI Settling Defendants had

settled with the SEC, they could have taken the position that they had done as much as they were required to do and that the settlement with the SEC provided any investor who thought he or she was entitled to recover with an efficient and inexpensive means of obtaining such recovery. Not only did counsel for plaintiffs take that risk, they advanced their own funds and financed the Constituent Actions and the consolidated action for over three years. Because of the magnitude of the action, the volume of documents produced and the sophisticated document management systems which had to be put in place, and the complexity, factual and legal, of the issues faced, counsel for plaintiffs were required to expend substantial amounts of professional time and money in order to prosecute the action, with no certainty of recovery thereof from any source, thereby magnifying the already substantial risks.

Attorneys who achieve a benefit for class members are entitled to be compensated for their services.[5]

This Court has held that the calculation of the fees to be awarded in an equitable fund case must be made in accordance with the Second Circuit's decision in *City of Detroit v. Grinnell Corporation* (*"Grinnell I"*), 495 F.2d 448 (2d Cir.1974) which mandates the use of the lodestar method.[6] However, this Court has found it appropriate to test the reasonableness of fee awards by reference to the percentage-of-recovery method.[7] The Court has also recognized that the lodestar analysis is subject to discretionary upward adjustments and provides a useful guide for determining a fair and reasonable fee in common fund recovery cases.[8]

■ The fee requested by Petitioners is appropriately to be considered under the lodestar/multiplier approach. Under this approach, the District Court must first quantify the attorney's services in terms of the time he has expended on the case.[9] Secondly, the court must value those hours. Next, the court must multiply the number of hours that each lawyer worked on the case by the hourly amount to which attorneys of like skill in the area would typically be entitled for a given type of work on the basis of an hourly rate of compensation.[10] The resulting number is the attorney's lodestar. Class Counsel's lodestar here is claimed to amount to $20,333,296.25.[11]

■ Calculation of the lodestar is simply the beginning of the analysis.[12] The Court has broad discretion which should be appropriately exercised to adjust the lodestar to take into account such factors as: (i) the contingent nature of the expected compensation for their services; (ii) the consequent risk of non-payment viewed as of the time of filing the suit; (iii) the quality of representation; (iv) the results achieved. In high risk common fund cases such as these, courts normally apply a multiplier to the lodestar to adjust for the foregoing considerations in arriving at the total fee to be awarded.[13]

---

**5.** *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980); *In re Terra–Drill Partnerships Securities Litigation*, 733 F.Supp. 1127, 1129 (S.D.Tex.1990) (Pollack, J. sitting by designation).

**6.** *In re Ivan Boesky Securities Litigation* (hereinafter *"Pacific Lumber"*) 888 F.Supp. 551, 560 (S.D.N.Y.1995) (Pollack, J.).

**7.** *Pacific Lumber*, 888 F.Supp. at 561; *In re Ames Dep't Stores, Inc. Debenture Litig.*, 835 F.Supp. 147, 149 (S.D.N.Y.1993) (Pollack, J.).

**8.** *In re Ames Dep't Stores, Inc. Debenture Litig.*, 835 F.Supp. at 149.

**9.** *Grinnell I*, 495 F.2d at 470. *See also Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 166–67 (3d Cir.1973) and *Lindy Brothers Builders Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102 (3d Cir.1976) (*en banc*).

**10.** *Grinnell I*, 495 F.2d at 470.

**11.** Joint Affidavit of Melvyn I. Weiss and Lawrence A. Sucharow, sworn to November 7, 1995, ¶ 104 (as adjusted).

**12.** *In re Warner Communications Sec. Litig.*, 618 F.Supp. 735, 747 (S.D.N.Y.1985), *aff'd*, 798 F.2d 35 (2d Cir.1986).

**13.** *In re Ames Dep't Stores, Inc. Debenture Litig.*, 835 F.Supp. at 150; *see also Warner Communications*, 618 F.Supp. at 747 ("[E]mphasis should be placed more on the quality of the representation, the complexity of the litigation, the benefit conferred on the class and the risk that the litigation may yield no reward than on doctrinaire adherence to the lodestar.").

■ Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award.[14] From the outset, there was considerable doubt as to whether a favorable result was achievable and whether despite thousands of hours of effort and hundreds of thousands of dollars in expenses, plaintiffs' counsel would be compensated. Petitioners have had considerable experience in complex class action litigation in this Court and in federal and state courts throughout the country.[15] The record demonstrates that Petitioners had the experience and resources to prosecute this case through trial and beyond, which contributed to the outstanding result. In the end, the quality of Petitioners' work is best reflected by the extraordinary Settlement obtained for the benefit of the Class.[16] The Settlement is among the largest resolutions of a class action ever achieved.[17]

In recent years the award of attorneys' fees based on a percentage-of-the-fund recovered for the class has found increased favor again with some courts,[18] although the lodestar method remains the basic required method in the Second Circuit.[19] The requested fee represents 30% of the common fund, after deduction of litigation expenses. Many courts have approved and awarded fees in class actions of one-third of the settlement fund in recognition of the substantial services performed by counsel and the risks undertaken.[20]

One untimely and improperly filed letter purporting to object to the Settlement and Fee request surfaced shortly before the fairness hearing. This isolated expression of opinion is to be viewed in the context of thousands of class members who have not expressed themselves similarly.

However, it is the Court's duty to avoid any sense of vicarious generosity and to enhance the lodestar determined by the Court with a fair step up. After mature reflection, it is the Court's considered opinion that the fair and reasonable measure for compensation of the herculean effort exhibited in this case and the result achieved and the delay in payment and the services required due to administrative requirements in distributing the recovery to the Class should be compen-

14. *See Warner Communications,* 618 F.Supp. at 747–49; *Florin v. Nationsbank of Georgia, N.A.,* 34 F.3d 560, 565 (7th Cir.1994); *In re Washington Public Power Supply System Litig.,* 19 F.3d 1291, 1302 (9th Cir.1994).

15. *See* Affidavits contained in the Compendium; *In re Michael Milken & Assoc. Sec. Litig.,* 150 F.R.D. 46, 53 (S.D.N.Y.1993) (Pollack, J.); *In re Drexel Burnham Lambert Group, Inc.,* 130 B.R. 910, 924 (S.D.N.Y.1991) (Pollack, J.), *aff'd,* 960 F.2d 285 (2d Cir.1992), *cert. denied,* 506 U.S. 1088, 113 S.Ct. 1070, 122 L.Ed.2d 497 (1993). *See also Warner Communications,* 618 F.Supp. at 749; *Paris v. Metropolitan Life Ins. Co.,* 94 F.Supp. 356, 358 (S.D.N.Y.1950); *Angoff v. Goldfine,* 270 F.2d 185, 192 (1st Cir.1959).

16. *See Warner Communications,* 618 F.Supp. at 748 ("The quality of work performed in a case that settles before trial is perhaps best measured by the benefit obtained."); *Grinnell I,* 495 F.2d at 470.

17. The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work. *Warner Communications,* 618 F.Supp. at 749. Here, the PSI Settling Defendants were represented by Cahill, Gordon & Reindel, one of New York City's most highly regarded defense firms. Before the case was transferred to this Court by the Judicial Panel on Multidistrict Litigation, plaintiffs' counsel faced a multitude of nationally regarded defense firms in the constituent actions including: Wilmer, Cutler and Pickering (*Kinnes*), Skadden Arps Slate Meagher & Flom, (*Gorman, Flanagan, Dumbroff*), Cahill Gordon & Reindel (*Kahn, Bottner, Weisl*), Weil, Gotshal & Manges (*Weisl*), Orrick, Herrington & Sutcliffe (*Kahn, Bottner*). Thus, Class Counsel have been confronted by some of the most highly skilled and respected firms and practitioners in the nation.

18. *See Gottlieb v. Barry,* 43 F.3d 474 (10th Cir. 1994); *Swedish Hospital Corporation v. Shalala,* 1 F.3d 1261, 1269 (D.C.Cir.1993); *Camden I Condominium Ass'n, Inc. v. Dunkle,* 946 F.2d 768, 774 (11th Cir.1991); *Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268, 272 (9th Cir. 1989).

19. *Pacific Lumber,* 888 F.Supp. at 560.

20. *See In re Crazy Eddie Sec. Litig.,* 824 F.Supp. 320, 324 (E.D.N.Y.1993) (33.8% of common fund for $14,200,000 fee); *In re Wedtech Sec. Litig.,* MDL 735, No. 86 CV 8628, *slip op.* (S.D.N.Y. July 31, 1992) (cited in *Crazy Eddie,* 824 F.Supp. at 326) (one-third of common fund for $17,665,-000 fee); *Cimarron Pipeline Construction Inc. v. National Council on Compensation Ins.,* 1993–2 Trade Cas. (CCH) ¶ 70,310, 1993 WL 355466 (W.D.Ok. June 8, 1993) (one-third of common fund for $11,660,000 fee).

sated by an award of fees in the amount of $29,700,000. The award shall cover all services rendered and to be rendered until completion of this partial settlement including final distribution of the class fund represented by the partial settlement.

The allowed amount (as adjusted) of counsel's costs and expenses of $1,895,311.16 shall be reimbursed currently out of the class recovery. An advance against fees payable shall be paid to counsel out of the Fund on deposit within 30 days hereof in the amount of 75% of the fee award. An amount representing 25% of the fee award shall be reserved for payment to be made contemporaneously with distribution of the class fund to the class members and the termination of the class fund applicable to the partial settlement herein. Said reserved amount is to be segregated under a sub-account of the Fund. It is fair and equitable that the interest earned on the deposited fund should be payable to the Class as compensation to it for that necessary delay and as some reimbursement for uncompensated losses of the class members. On the other hand the enhancement of the lodestar awarded to counsel has included consideration for the necessary further services and delay in completely satisfying their contingency interest until that has ripened into an actual distribution to the class.

The fees awarded to counsel are in satisfaction of all services previously rendered as well as those additional administrative services contemplated to be performed in connection with the distribution of the Fund from the partial settlement. In the event that unusual or extraordinary administration services are required, the attorneys for the Class may apply to the Court for further consideration of such circumstances.

The award shall be allocated among the attorneys who participated in the prosecution of the class proceedings through to the partial settlement, to be made under guidance of Melvyn I. Weiss and Lawrence A. Sucharow, Liaison Counsel for plaintiffs' Executive Committee and evidenced by agreements reached by all participants and approved by the Court.

An order and final judgment awarding attorneys' fees and expenses, accordingly, including a Rule 54(b) determination, should be submitted for the Court's consideration.

SO ORDERED.