### In re PAINEWEBBER LIMITED PARTNERSHIPS LITIGATION.

**This Document Relates to All Actions.**

This Document Also Relates To (But Is Not Filed In) the Coordinated Action Neidich et al. v. Geodyne Resources Inc., et al., No. 94–052860, Pending in the District Court of Harris County, Texas.

No. 94 Civ. 8547(SHS).

United States District Court, S.D. New York.

March 27, 1998.

*OPINION AND ORDER*

STEIN, District Judge.

Presently before the Court is the Joint Fee Petition submitted by counsel for the plaintiff class ("Class Counsel") in the above-captioned consolidated class action. Class Counsel's efforts have resulted in the establishment of a $125,000,000 fund for the benefit of the Class, plus contingent "Additional Benefits," which the parties have valued at $75,000,000. Class Counsel seeks a fee of 27.5% of the cash settlement fund, plus interest thereon from the date of the deposit of the funds, plus 27.5% of any monies ultimately paid as "Additional Benefits" to the Class, for an award that could approximate $55 million in fees. In addition, petitioners seek $3,687,577 in litigation expenses. For the reasons that follow, this Court awards counsel: a multiplier of 1.4 on its lodestar, payable out of the $125,000,000 cash settlement fund (plus interest thereon from the date of deposit), plus reasonable fees incurred in the future to implement the payment of "Additional Benefits" to the Class at the same multiplier, subject to the approval of the Court, and $3,687,577 in litigation expenses.

## I. History of the Litigation

The history of this litigation and the details of the Settlement Agreement reached by the parties are set forth in full measure in this Court's Opinion and Order dated March 20, 1997, *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 1997 U.S. Dist. LEXIS 3254 (S.D.N.Y.) (*"PaineWebber I"*), aff'd 117 F.3d 721 (2d Cir.1997). Only those facts relevant to the disposition of the pending petition are presented here.

Beginning on November 23, 1994, and continuing through January 4, 1995, ten lawsuits were filed in this District by individual plaintiffs against PaineWebber, its parent, PaineWebber Group, Inc., and various other

entities. The suits alleged, among other things, RICO, securities fraud and common law claims arising out of PaineWebber's operation and marketing of certain limited partnerships and investment trusts and requesting certification as class actions. The complaints were consolidated into one proceeding (the "Federal Action") and a Corrected First Consolidated Amended Class Action Complaint was filed on March 27, 1995. *See PaineWebber I*, 171 F.R.D. at 107–109, 1997 U.S. Dist. LEXIS 3254, at *6–13. Later, three additional cases were added to the Consolidated Complaint and the Consolidated Complaint was certified as a class action pursuant to Fed.R.Civ.P. 23(b)(3). The class in the Federal Action consists, with limited exceptions, of all persons and entities who purchased units in one or more of the partnerships between January 1, 1980 and December 31, 1992. *See id.* at 109, 1997 U.S. Dist. LEXIS at *12.

By late 1994, individual plaintiffs had filed two lawsuits in Texas state court (the "Texas Actions") alleging state law fraud and breach of fiduciary duty claims against PaineWebber and others in connection with the sale of oil and gas limited public partnerships (the "Geodyne Partnerships") encompassed by the Federal Action. *See id.* at 109, 1997 U.S. Dist. LEXIS at *13–14. (*See also* Objection of the Securities and Exchange Commission, Amicus Curiae, to Request for Attorneys' Fees ("SEC Objection Mem."), at 3–4). The Texas Actions were consolidated on April 26, 1995, under the caption *Neidich, et al. v. Geodyne Resources, Inc., et al.*, No. 94–052860, and an Executive Committee of plaintiffs' counsel was appointed. *See Paine-Webber I*, at 109, 1997 U.S. Dist. LEXIS at *14.

In May of 1995, the plaintiffs in the Texas Actions filed a Consolidated and Amended Petition in state court against PaineWebber and other defendants, charging defendants with substantially the same course of conduct set forth in the Federal Action. The following month, the Consolidated Petition was certified as a class action pursuant to Rule 42(b)(4) of the Texas Rule of Civil Procedure. *See id.*

In late May and early June of 1995, orders were issued in the Federal and Texas Actions to coordinate the actions in Federal Court for pretrial purposes. The Texas Class agreed to be bound by the Federal Court's final determination of the legal and factual issues concerning the partnership units involved, and to coordinate with the Federal Class all pleadings and pretrial motion practice, as well as investigation and discovery. On June 7, 1995, a joint Notice of Pendency of the Class Action was mailed to all class members, and within 10 days of this mailing, a summary version of the Notice was printed in major newspapers. *See id.* at 109–110, 1997 U.S. Dist. LEXIS at *16–17.

One day before the first federal complaint was filed in this Court, and nearly one month after the first state court action was filed in Texas, a November 22, 1994 *Wall St. Journal* article reported the existence of a previously non-public investigation by the Securities and Exchange Commission ("SEC") into Paine-Webber's sale of the Geodyne Partnerships that were the subject of the Texas and Federal Actions. *See id.* at 114–115, 1997 U.S. Dist. LEXIS at *35–36.

After extensive, coordinated discovery by Class Counsel in the summer and fall of 1995, Class Counsel and defendants executed a Memorandum of Understanding ("MOU"), which provided the outlines of a settlement agreement, including payment by Paine-Webber of $125 million in cash, and certain "Additional Benefits" valued at $75 million. Pursuant to the MOU, PaineWebber deposited $125 million into an interest-bearing escrow account on January 18, 1996. *See id.* at 113, 1997 U.S. Dist. LEXIS at *30.

During the course of discovery, and before the MOU was signed, the SEC investigation was ongoing. Class Counsel were not privy to that investigation, nor were they informed that the SEC had been engaged in preliminary settlement talks with PaineWebber. On July 27, 1995, however, PaineWebber publicly reported that it was taking a $200 million charge against earnings to cover potential liabilities arising from its marketing and sale of the limited partnerships, including liability resulting from any judgments, settlements, fees and costs incurred in con-

nection with a possible SEC action and the private actions. The company also announced that it had entered settlement negotiations with the SEC. *See id.* at 114–115, 1997 U.S. Dist. LEXIS at *35–36.

On January 17, 1996, the SEC issued an order ("SEC Order"), finding extensive federal securities law violations and imposing sanctions. The SEC Order was filed in this Court on January 18, 1996, contemporaneously with the MOU in the Federal and Texas Actions. PaineWebber agreed in the SEC Order to pay a total of $292.5 million for the benefit of investors in the limited partnerships. Included in this amount was $40 million for a special claims fund ("SEC Fund") to be allocated among eligible claimants by a court-appointed claims administrator, a $5 million civil penalty, and credit for the $125 million it was to pay in settlement of the Federal and Texas Actions; however, if settlement of the Class Actions were not approved by January 27, 1997 (subject to a three-month extension), the $125 million was to be transferred to the SEC Fund that was established as part of the SEC Action. *See id.* at 115, 1997 U.S. Dist. LEXIS at *36–38. As a result of the SEC Order—to which PaineWebber consented without admitting or denying the SEC's findings—PaineWebber had a significant financial incentive to settle the Class Actions and to do so promptly.

Following execution of the MOU, and pursuant to its terms, the parties proceeded with the negotiation of "Additional Benefits," the purpose of which was to confer approximately $75 million in economic value to the Class without an immediate cash outlay by PaineWebber. The "Additional Benefits" became part of a final settlement agreement ("Settlement Agreement") which the parties concluded on July 11, 1996, and which this Court preliminarily approved on July 17,

1996. After class members were given notice of the Settlement Agreement in August of 1996 (via mailing and publication in national newspapers),[1] and after a limited number of objections to the Settlement Agreement were received by the Court, this Court held a fairness hearing on October 25 and November 8, 1996.

As noted above, by Opinion and Order dated March 20, 1997, this Court approved the terms of the Settlement Agreement, including the proposed Plan of Allocation, pursuant to Fed.R.Civ.P. 23(e), finding that the Agreement and Plan of Allocation were "fair, reasonable and adequate, and ... in the best interests of the Class." *See id.* at 135, 1997 U.S. Dist. LEXIS at *110–111.

## II. Efforts of Class Counsel

Class Counsel undertook this complex litigation on a contingent basis. They actively litigated the cases for approximately two years before reaching a settlement. Class Counsel conducted a thorough and efficient discovery process, coordinating discovery of hundreds of boxes of documents through the use of sophisticated computer databases, and deposing many key witnesses. Moreover, negotiating and effectuating the Settlement Agreement's final terms required substantial effort on the part of Class Counsel. (*See* Class Plaintiffs' Memorandum in Support of Request for Final Approval of Class Action Settlement and Plan of Allocation, in Support of the Joint Petition for an Award of Attorneys' Fees and Litigation Expenses, and in Response to Objections ("Plfs' Mem."), at 95–99).

The Class Members have responded quite favorably to the Settlement Agreement. The Court has received a limited number of objections to the fee request[2]—the most exten-

---

1. The class notice and the stipulation of settlement stated that Class Counsel intended to petition for fees at the fairness hearing as follows: "Class Counsel are expected to apply to the Court at the Settlement Fairness Hearing for an award of attorneys' fees in the amount of 27.5% of the $125 million Cash Settlement Amount, or approximately $34,375,000.00, and 27.5% of any cash proceeds which are paid for the benefit of the Classes by reason of the Additional Benefits, together with interest accruing on such awarded

fees from the date of the establishment of the settlement funds." (Class Notice, ¶ 60).

2. Among the objections received were: (1) a class member who objected to the proposed use of the percentage method of calculating fees; (2) two class members who believed PaineWebber, not the Settlement Fund, should pay fees; and (3) two members who objected generally to the size of the fee request. The concerns conveyed by these objections are encompassed within this decision.

sive was submitted by the SEC—and nearly 57,000 Class Members have submitted valid Proofs of Claim for consideration by the Claims Administrator pursuant to the terms of the Settlement Agreement.

In support of its petition Class Counsel has submitted affidavits from all counsel, detailing the fees and expenses incurred in furtherance of this litigation. These affidavits set forth the number of attorney and paralegal hours expended in this litigation by each individual at each firm involved, as well as the hourly rates charged by the firms for such services, with a breakdown by type of task performed. Class Counsel have spent approximately 70,000 hours in heretofore uncompensated legal work in pursuit of factual investigation, drafting of documents, brief writing, document analysis, depositions, trial preparation, settlement negotiation and other tasks. Given the non-contingent hourly rates involved, Class Counsel's lodestar is $18,536,-147. The "lodestar" is comprised of the number of hours devoted by counsel multiplied by counsel's normal, non-contingent hourly billing rates. The fees requested by Class Counsel—27.5% of the $125 million cash settlement fund (with accrued interest), plus 27.5% of any cash distributed pursuant to the "Additional Benefits" provision of the Settlement Agreement—represent, roughly, a 2.0 multiplier of their lodestar figure. Of course, at least some of the work for which Counsel is requesting compensation is necessarily prospective: the structure of the "Additional Benefits" is such that the Classes will likely be receiving benefits from the Settlement until the year 2007, requiring future attorney time to monitor and implement later distributions. This bifurcation of the fee request makes translation between a "lodestar plus multiplier" figure and a "percentage of recovery" figure difficult.

The affidavits also detail the $3,687,577 requested by Class Counsel as reimbursement for litigation expenses, which include,

among other costs, expert witness fees, a computerized document database, travel expenses, court reporting services, research charges, and reproduction expenses through May 31, 1997. The Court, after reviewing the submissions by Class Counsel, finds that the $3,687,577 was appropriately incurred and documented by the various counsel in this litigation and, accordingly, hereby awards Class Counsel $3,687,577 in expenses.

## III. Discussion

### A. *Common Fund Doctrine*

■ "The common or equitable fund doctrine ... 'allows an attorney whose actions have conferred a benefit upon a given group or class of litigants [to] file a claim for reasonable compensation for his efforts.' " *Berlinsky v. Alcatel Alsthom Compagnie Generale D'Electricite*, 970 F.Supp. 348, 349 (S.D.N.Y.1997) (quoting *City of Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1098 (2d Cir. 1977) ("*Grinnell II* ")). In reviewing the reasonableness of a fee request pursuant to this doctrine, the critical inquiry is whether the fees represent "fair and just compensation for [counsel's] respective efforts." *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir.1987) (citation omitted).

### B. *Fee Determination*

"[T]o provide counsel with such compensation and, at the same time, temper these awards to prevent windfalls, [this Circuit has] adopted a lodestar formula for calculating fees in equitable fund ... cases." *Id.* Although a few district courts in this circuit have used the "percentage of fund" approach advanced by Class Counsel,[3] and while that approach has found increasing favor of late in other circuits,[4] the Second Circuit has counseled against undue reliance on "the contingent fee syndrome" implicit in the "percentage of fund" approach and has held the lodestar method to be the proper basis for assigning fees in common fund cases.

---

**3.** *See e.g., Dubin v. E.F. Hutton Group Inc.*, 878 F.Supp. 616 (S.D.N.Y.1995); *In re Crazy Eddie Securities Litig.*, 824 F.Supp. 320, 327 (E.D.N.Y. 1993); *Chatelain v. Prudential–Bache Securities, Inc.*, 805 F.Supp. 209, 215–16 (S.D.N.Y.1992).

**4.** *See e.g., Gottlieb v. Barry*, 43 F.3d 474 (10th Cir.1994); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C.Cir.1993); *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir.1991); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).

*City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 468, 470 (2d Cir.1974) (*"Grinnell I"*) ("the starting point of every fee award . . . must be calculation of the attorney's services in terms of the time he [or she] has expended on the case."). Accordingly, this Court will apply the lodestar method.

As noted above, the lodestar is calculated by multiplying the number of hours reasonably billed by the hourly rate normally charged for equivalent work by similarly-skilled attorneys in the area. *Grinnell II,* 560 F.2d at 1098. After a review of the time records and affidavits of counsel, the Court finds the amount of time claimed for each attorney and paralegal to be reasonable. Moreover, the hourly billing rates employed by the experienced counsel involved in this litigation correspond to the rates normally charged for similar work by attorneys of like caliber. Thus, the $18,536,147 lodestar figure is reasonable.

■ Calculation of the lodestar, however, is the beginning of the analysis. *See In re Prudential Securities Inc. Ltd. Partnerships Litig.,* 912 F.Supp. 97, 102 (S.D.N.Y. 1996); *In re Warner Communications Securities Litig.,* 618 F.Supp. 735, 747 (S.D.N.Y. 1985), *aff'd,* 798 F.2d 35 (2d Cir.1986). The Court, after calculating the lodestar, has discretion to adjust this amount based on a number of "less objective factors," while remaining conscious of its role as a fiduciary who must protect the rights of absent class members. *Grinnell I,* 495 F.2d at 471; *Grinnell II,* 560 F.2d at 1099. "Perhaps the foremost of these factors is the attorney's 'risk of litigation,' i.e., the fact that, despite the most vigorous and competent of efforts, success is never guaranteed." *Grinnell I,* 495 F.2d at 471. Among the questions a court should ask to determine the "risk of litigation" are: (1) whether the legal and factual issues involved were "novel and complex or straightforward and well worn"; and (2) whether "a relevant government action [has] been instituted or, perhaps, even successfully concluded against the defendant." *Id.* Both of these questions, and their answers, bear heavily in the Court's analysis of the risks faced by Class Counsel in this case.

■ As noted in *PaineWebber I,* Class Counsel faced significant litigation risk in bringing these actions. The issues involved were complex, *see PaineWebber I,* at 125, 1997 U.S. Dist. LEXIS at *74–75, and the RICO and fraud claims faced significant substantive and procedural defenses: most notably, a defense based on the applicable statute of limitations for the RICO claims, and a defense based on the "bespeaks caution" doctrine with respect to the fraud claims. *See id.* at 126–127, 1997 U.S. Dist. LEXIS at *79–85. Thus, Class Counsel was by no means faced with certain recovery in these actions.

Tempering these risks, however, was the SEC's contemporaneous investigation of PaineWebber. The SEC, as amicus curiae, has filed an objection to Class Counsel's request for attorneys' fees, largely premised on its belief that the SEC investigation reduced Class Counsel's risk in filing and pursuing this matter. In response, Class Counsel asserts that its litigation and ultimate settlement with PaineWebber were conducted independently of the SEC investigation and settlement, even going so far as to contend that its attempts at settlement were "actually made more difficult by the SEC Action because [they] arguably were competing (on parallel tracks but without knowing it) for limited dollars." (Plfs' Mem. at 105). The Court disagrees with Class Counsel's position.

First, Class Counsel made early use of the SEC Action, even referring to the SEC investigation in the Federal Action's Amended Complaint. (*See* SEC Objection Mem. at 11–12). Second, and relatedly, knowledge of the SEC Action, and public reports of settlement discussions between PaineWebber and the SEC, would have given Class Counsel strong reason to believe that PaineWebber perceived that it faced substantial exposure to liability for claims arising from its sale of the relevant partnerships. This recognition was made all the more tangible when, in July 1995, PaineWebber publicly announced that it was sustaining a $200 million charge to earnings to cover anticipated costs to resolve claims brought by the SEC and private parties. (*See id.* at 12). Finally, the SEC Or-

der, entered on January 17, 1996, put palpable pressure on PaineWebber to settle the pending Federal and Texas Actions by providing, in essence, that by not settling, PaineWebber would be required to enhance the SEC claims fund by the $125 million ultimately paid to a fund for Class Members, without obtaining a release of liability from the Class. In short, while Class Counsel did not necessarily piggyback on the SEC's efforts from the beginning of these actions, their risk in litigating Class Members' claims was substantially reduced by pressure placed on PaineWebber in the SEC Order. Largely for this reason, the Court declines to award Class Counsel the doubling of its lodestar that they seek.

Other factors that the Court considers in determining a reasonable award of attorneys' fees include the quality of the representation and the amount recovered for the Class. *See Grinnell I*, 495 F.2d at 470. The Court, having had the opportunity to observe first hand the quality of Class Counsel's representation during this litigation, finds that Class Counsel's representation of the Class has been of high caliber in conferences, in oral arguments and in work product. In addition, few could blink at the substantial results achieved in this litigation for the Class, totaling an estimated $200 million, plus interest.

Assessing these competing factors and exercising its discretion, the Court finds that an adjustment of 1.4 times the reported lodestar is appropriate, and awards a fee of $25,950,-605, plus interest thereon from the date of the deposit of the cash settlement fund. In addition, as noted above, Class Counsel may be required to expend additional resources over time in implementing and monitoring the "Additional Benefits" provision of the Settlement Agreement. Accordingly, the Court will award Class Counsel reasonable fees incurred over time in that pursuit. Those future fees will also be upwardly adjusted by a 1.4 multiplier to account for the fact that any future benefits received by the Class will have been the result of the efforts and risk previously undertaken by Class Counsel in commencing and pursuing these actions. Class Counsel is ordered to submit to the Court and to the Claims Administrator, on a semi-annual basis, time records detailing the attorney and paralegal fees incurred in the course of recovering the cash portion of any "Additional Benefits."

## IV. Conclusion

Accordingly, petitioners' request for an award of attorneys' fees and for reimbursement of expenses is granted to the extent that Class Counsel is awarded $25,950,605 (plus interest) in attorneys' fees and $3,687,-577 in expenses. In addition, Class Counsel will receive over time reasonable attorneys' fees, based on a multiplier of 1.4 to the lodestar figure, to compensate for future work expended in monitoring and implementing the cash portion of "Additional Benefits" received, subject to the approval of the Court.

SO ORDERED.