946 F.2d 768
 21 Fed.R.Serv.3d 819
 CAMDEN I CONDOMINIUM ASSOCIATION, INC., Camden L.
Condominium Association, Inc., Cambridge A. Condominium
Association, Inc., Cambridge I Condominium Association,
Cambridge F. Condominium Association, Inc., Chatham A.
Condominium Association, Inc., Chatham M. Condominium
Association, Inc., Coventry A. Condominium Association,
Inc., Coventry J. Condominium Association, Inc., Dorchester
E. Condominium Association, Inc., Kent D. Condominium
Association, Inc., Kent J. Condominium Association, Inc.,
Salisbury D. Condominium Association, Inc., Salisbury E.
Condominium Association, Inc., Somerset A. Condominium
Association, Inc., Somerset C. Condominium Association,
Inc., Somerset H. Condominium Association, Inc., Somerset I.
Condominium Association, Inc., Waltham E. Condominium
Association, Inc., Waltham H. Condominium Association, Inc.,
and Windsor N. Condominium Association, Inc., Florida
corporations not for profit, Plaintiffs-Appellants,
v.
John B. DUNKLE, Clerk of the 15th Judicial Circuit of
Florida, and Palm Beach County, Defendants-Appellees.
 No. 90-6074.
 United States Court of Appeals,
Eleventh Circuit.
 Nov. 4, 1991.
 
 Larry Klein, Klein & Walsh, West Palm Beach, Fla., for plaintiffs-appellants.
 Phillip T. Crenshaw, West Palm Beach, Fla., for Swenson.
 Thomas H. Duffy, Gregory T. Stewart, Nabors, Giblin & Nickerson, Tallahassee, Fla., for Palm Beach County.
 Appeal from the United States District Court for the Southern District of Florida.
 Before TJOFLAT, Chief Judge, DUBINA, Circuit Judge and WILLIAMS*, Senior Circuit Judge.
 DUBINA, Circuit Judge:
 
 
 1
 Appellants, Camden I Condominium Association, Inc., et al. ("the Associations"), appeal the district court's award of attorneys' fees in this class action. For the reasons which follow, we vacate the district court's order and remand this case for further proceedings.
 
 I. FACTUAL BACKGROUND
 
 2
 The Associations sued John B. Dunkle, the clerk of Florida's 15th Judicial Circuit, and Palm Beach County (collectively referred to as "the County"), to recover interest on funds deposited with the circuit court. The Associations ultimately prevailed on the merits, which are not at issue in this appeal. See Camden I Condominium Ass'n, Inc. v. Dunkle, 805 F.2d 1532 (11th Cir.1986), cert. denied, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 765 (1987).[1]
 
 
 3
 After the district court granted class certification, the case was settled. The settlement provided that the County would create a fund of $3,000,000 to pay all claims, including attorneys' fees and costs, and that any unclaimed funds would revert to the County. The class members were notified that the attorneys for the class would be seeking a fee and cost award of 31% of the class fund. None of the class members objected. Instead of a contingency percentage award, however, the district court calculated fees based upon the lodestar and risk enhancement method utilized in calculating attorneys' fees under fee-shifting provisions such as the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988. The district court accepted all time recorded by the Associations' attorneys, applied the current billing rate in order to compensate for delay, and adjusted the award upward by one-third to allow for risk enhancement. The district court limited its enhancement to one-third in reliance upon Pennsylvania v. Delaware Valley Citizens' Council, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987). The district court's calculations resulted in a fee of approximately one-half of the 31% contingency fee requested by the Associations.
 
 II. DISCUSSION
 
 4
 The Associations contend on appeal that the district court erred in the following respects: (1) calculating attorneys' fees based upon the lodestar and risk enhancement method rather than a percentage of the class action common fund; (2) limiting risk enhancement to one-third; and (3) utilizing present hourly rates to compensate for delay in payment. This court reviews an award of attorneys' fees for abuse of discretion; nevertheless, that standard of review allows us to closely scrutinize questions of law decided by the district court in reaching the fee award. See Haitian Refugee Ctr. v. Meese, 791 F.2d 1489, 1496, vacated in part on other grounds, 804 F.2d 1573 (11th Cir.1986). See also Skelton v. General Motors Corp., 860 F.2d 250, 257 (7th Cir.1988), cert. denied, 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989).
 
 
 5
 According to the now axiomatic American Rule, which was reaffirmed by the United States Supreme Court in Alyeska Pipeline Service Co. v. Wilderness Soc'y, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), all parties are to bear their own costs in litigation. One of the recognized exceptions to the American Rule is the "common fund" case. The common fund exception "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." Boeing Co. v. Van Gemert, 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980). Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval. Fed.R.Civ.P. 23(e).
 
 
 6
 Historically, the rationale entitling counsel to a percentage of the common fund derives from the equitable power of the courts under the doctrines of quantum meruit, Central R.R. & Banking Co. v. Pettus, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885); unjust enrichment, see, e.g., Trustees v. Greenough, 105 U.S. (15 Otto) 527, 26 L.Ed. 1157 (1881); and later, what has become known as the "substantial" or "common benefit" doctrine. Under this doctrine, fee reimbursement is permitted in the following circumstances:
 
 
 7
 (1) when litigation indirectly confers substantial monetary or nonmonetary benefits on members of an ascertainable class, and (2) when the court's jurisdiction over the subject matter of the suit, and over a named defendant who is a collective representative of the class, makes possible an award that will operate to spread the costs proportionately among class members.
 
 
 8
 H. Newberg, Attorney Fee Awards § 2.01 at 28-29 (1986). See also Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970).
 
 
 9
 In accordance with the well-established common fund exception to the American Rule, we are persuaded that class counsel herein are entitled to an award of their fees and expenses out of the fund that has been created for the class by their efforts.[2] The dispositive issue in this appeal is whether such fees should be based upon a percentage of the fund or the lodestar computation method.
 
 
 10
 A. The Appropriate Method of Calculating A Common Fund Fee Award
 
 
 11
 During the 1970's, a debate was triggered primarily in the Second and Third Circuits over the appropriate method of calculating a common fund fee award. This controversy still affects how attorneys' fees are awarded. Thus, a look back at both the history of the common fund fee doctrine and the more recent instructions regarding its use and calculation by the United States Supreme Court and commentators will prove instructive.
 
 
 12
 1. The Historical Method of Computing a Common Fund Fee Award
 
 
 13
 In the first Supreme Court case recognizing that attorneys had a claim to fees payable out of a common fund which has been created through their efforts, a fee was awarded based upon a percentage of the fund recovered for the class. Pettus, 113 U.S. at 127-28, 5 S.Ct. at 393. Because class counsel in Pettus had an agreement with the named plaintiffs limiting the percentage of their fee, the Court used that fee agreement as a guideline to determine a reasonable percentage based fee. Id. at 128, 5 S.Ct. at 393. From the time of the Pettus decision in 1885 until 1973, fee awards granted pursuant to the common fund exception were computed as a percentage of the fund. The amount of the fee was left to the district court's discretion, with the only standard being reasonableness under the circumstances of a particular case. See, e.g., Newberg, supra, § 202 at 31; Court Awarded Attorney Fees, Report of the Third Circuit Task Force, October 8, 1985 (Arthur R. Miller, Reporter), 108 F.R.D. 237, 242 (1985) (the "Task Force Report").
 
 
 14
 2. The Lindy Lodestar and Johnson Twelve-Factor Approaches
 
 
 15
 In an effort to provide findings on fee awards that could be more easily reviewed by the courts of appeal and to insure that attorneys be compensated for the reasonable value their time would normally command in the marketplace, the Third Circuit in 1973 established a prescribed set of guidelines that district courts in that circuit would be required to consider in arriving at a reasonable fee award under the common fund doctrine. In Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161 (3d Cir.1973), appeal following remand, 540 F.2d 102 (3d Cir.1976), the Third Circuit reviewed a district court's order approving attorneys' fees out of a common fund which was created by the settlement of several class actions charging a conspiracy to fix prices in violation of the Sherman Act. The Third Circuit in Lindy vacated the district court's fee award and set forth new fee award guidelines and prescribed steps, which now are known commonly as the "lodestar" approach.
 
 
 16
 To arrive at a lodestar figure under the Third Circuit's approach, the district court must first determine the number of hours reasonably spent by the plaintiffs' counsel on the matter, then multiply those hours by an hourly rate the court deems reasonable for similarly complex non-contingent work. That lodestar figure may then be adjusted upward or downward for certain factors known as multipliers, such as contingency and the quality of the work performed, to arrive at a final fee.
 
 
 17
 At approximately the same time as the Lindy decision was rendered, the United States Court of Appeals for the Fifth Circuit in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974), adopted a twelve-factor method of determining court-awarded attorneys' fees.[3] Although Johnson was a statutory fee award case pursuant to 42 U.S.C. § 1988 and not a common fund case, it has been applied outside the realm of statutory fees. See, e.g., Hoffert v. General Motors Corp., 656 F.2d 161 (5th Cir. Unit A 1981), cert. denied, 456 U.S. 961, 102 S.Ct. 2037, 72 L.Ed.2d 485 (1982) (product liability claim).
 
 
 18
 The Task Force Report noted that "most commentators consider Johnson to be little different from Lindy because the first criterion of the Johnson test, and indeed the one most heavily weighted, is the time and labor required. Similarly, many of the Johnson factors are subsumed within the initial calculation of hours reasonably expended at a customary hourly rate." 108 F.R.D. at 244. Recently, in light of five Supreme Court statutory fee award decisions[4] in which the Johnson factors were presumptively included in the lodestar calculation, the Eleventh Circuit has refined its analysis for determining statutory fee awards. See Norman v. Housing Auth. of City of Montgomery, 836 F.2d 1292 (11th Cir.1988). In Norman, this court noted the lodestar approach has been favored "because it produces a more objective estimate and ought to be a better assurance of more even results." Id. at 1299.
 
 
 19
 3. Endorsement of the "Percentage of the Fund" Approach in Common Fund Fee Awards
 
 
 20
 Regardless of the approaches begun in some of the circuit courts in the 1970's, the Supreme Court has never formally adopted or authorized the Lindy lodestar in the context of a common fund fee award, even though it was provided the opportunity to do so in Boeing Co., 444 U.S. at 472, 100 S.Ct. at 745. Indeed, every Supreme Court case addressing the computation of a common fund fee award has determined such fees on a percentage of the fund basis. See, e.g., Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); Pettus, 113 U.S. at 128, 5 S.Ct. at 393; Greenough, 105 U.S. at 532.
 
 
 21
 The Supreme Court made the following distinction between common fund and statutory fee cases in Blum v. Stenson, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984):
 
 
 22
 Unlike the calculation of attorney's fees under the "common fund doctrine," where a reasonable fee is based on a percentage of the fund bestowed on the class, a reasonable fee under § 1988 reflects the amount of attorney time reasonably expended on the litigation.
 
 
 23
 Id. at 900 n. 16, 104 S.Ct. at 1550 n. 16. The Supreme Court's assertion in Blum is not surprising in light of the criticism commentators and lawmakers have leveled against the lodestar and twelve-factor methods in common fund cases, and more particularly, against the emphasis placed by such fee computation methods on the number of hours expended.[5]
 
 
 24
 The most significant criticism of the Lindy and Johnson approaches is found in the Task Force Report.[6] Considering the great distinctions between the policies and rationale supporting common fund fee awards versus statutory fee awards, distinctions acknowledged in Blum, and recognizing that the lodestar approach may have been applied improperly to common fund cases, the Third Circuit commissioned its task force to study the problems of court-awarded attorneys' fees and to develop recommendations that would accomplish the following goals:
 
 
 25
 [T]o provide fair and reasonable compensation for attorneys in those matters in which fee awards are provided by federal statute or by the fund-in-court doctrine; to discourage abuses and delays in the fee-setting process; to encourage early settlement or determination of cases; to provide predictability; to carry out the purposes underlying court-awarded compensation; to simplify the process by reducing the burdens it currently imposes on the courts and on litigants; and to arrive at fee awards that are fair and equitable to the parties and that take into account the economic realities of the practice of law.
 
 
 26
 Task Force Report, 108 F.R.D. at 238.
 
 
 27
 The Task Force found that the Lindy lodestar approach, or for that matter, any method premised upon the number of hours expended, failed to achieve any of these stated goals in common fund cases in which the measure of the recovery is the best determinant of the reasonableness and quality of the time expended. Instead, the Task Force recommended that all fee awards in common fund cases be awarded as a percentage of the fund. 108 F.R.D. at 255. Further, the Task Force recommended that the percentage to be awarded should be negotiated early on in the litigation so that the attorneys could devote their full time to attempting to increase the fund for the class, which in turn increases their own fee. 108 F.R.D. at 258.
 
 
 28
 As the Task Force Report explains, a key element of the common fund case is that fees are not assessed against the unsuccessful litigant (fee shifting), but rather, are taken from the fund or damage recovery (fee spreading). 108 F.R.D. at 250. Furthermore, in contrast to the calculation of a statutory fee, "payable by the defendant depending on the extent of success achieved, a common fund is itself the measure of success ... [and] represents the benchmark on which a reasonable fee will be awarded." Newberg, supra, § 2.07 at 47. Consequently, the analysis in a common fund case focuses not on the plaintiffs' position as "prevailing parties," but on a showing that the fund conferring a benefit on the class resulted from their efforts. Id., § 2.06 at 40. In this context, monetary results achieved predominate over all other criteria. Id., § 2.06 at 41.
 
 
 29
 Since the Supreme Court's acknowledgement in Blum that common fund fee awards should be computed as a fair percentage of the fund, courts increasingly have begun to retreat from the Lindy and Johnson approaches and to endorse the percentage of the fund method. Evans v. City of Evanston, 941 F.2d 473, 479-80 (7th Cir.1991) (holding that recovery from both defendants and common fund unnecessary, while recognizing that continued advisability of using civil rights fee determination methodology in common fund cases is questioned by language in Blum); Weinberger v. Great Northern Nekoosa Corp., 925 F.2d 518, 526 n. 10 (1st Cir.1991) (affirming district court's use of lodestar method because no true common fund existed in case, but stating court's awareness of tendency of courts in common fund cases to jettison lodestar in favor of reasonable percentage of the fund approach); Florida v. Dunne, 915 F.2d 542, 545 (9th Cir.1990) (allowing use of either lodestar or percentage of the fund method in common fund cases, despite recent support for mandating percentage of the fund approach, so long as fee awarded is reasonable); Brown v. Phillips Petroleum Co., 838 F.2d 451, 454 (10th Cir.), cert. denied, 488 U.S. 822, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988) (holding, in reliance on Blum, that award of attorneys' fees on percentage basis in common fund case not abuse of discretion, but requiring that fee award be reasonable and that district court articulate specific reasons to facilitate appellate review); Bebchick v. Washington Metro. Area Transit Comm'n, 805 F.2d 396, 407 (D.C.Cir.1986) (affirming use of percentage to support enhancement of lodestar, and noting that the common fund doctrine recognizes percentage awards and is not restricted to the lodestar method).
 
 
 30
 After reviewing Blum, the Task Force Report, and the foregoing cases from other circuits, we believe that the percentage of the fund approach is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class. The lodestar analysis shall continue to be the applicable method used for determining statutory fee-shifting awards.
 
 
 31
 B. Determination of the Appropriate Percentage of A Common Fund to Be Awarded As A Fee
 
 
 32
 There is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee because the amount of any fee must be determined upon the facts of each case. "[I]ndividualization in the exercise of a discretionary power [for fee awards] will alone retain equity as a living system and save it from sterility." Sprague, 307 U.S. at 167, 59 S.Ct. at 780.
 
 
 33
 The majority of common fund fee awards fall between 20% to 30% of the fund. Newberg, supra, § 2.08 at 51. The Task Force Report found that "[j]udges systematically awarded fees in the range of twenty to twenty-five percent of the fund...." 108 F.R.D. at 247 n. 32. To avoid depleting the funds available for distribution to the class, an upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded. Newberg, supra, § 2.08 at 51.
 
 
 34
 In an effort to provide appellate courts a record for review of attorneys' fee awards, district courts are beginning to view the median of this 20% to 30% range, i.e., 25%, as a "bench mark" percentage fee award which may be adjusted in accordance with the individual circumstances of each case, as opposed to the lodestar hourly fee used in statutory fee awards. See, e.g., Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir.1989); Bebchick, 805 F.2d at 407; Mashburn v. National Healthcare, Inc., 684 F.Supp. 679, 692 (M.D.Ala.1988); Meshel v. Nutri/System, Inc., 102 F.R.D. 135, 140 (E.D.Pa.1984); Newberg, supra, § 2.08 at 51-52. "To avoid the problems and criticisms of a common fund fee award being summarily granted as a percentage of the fund recovered without any findings supporting its reasonableness ... courts are now supporting their percentage awards with particular findings showing factors considered." Id., § 2.07 at 47.
 
 
 35
 The factors which will impact upon the appropriate percentage to be awarded as a fee in any particular case will undoubtedly vary. We agree with the Tenth Circuit that the Johnson factors continue to be appropriately used in evaluating, setting, and reviewing percentage fee awards in common fund cases. Brown, 838 F.2d at 454. Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action. In most instances, there will also be additional factors unique to a particular case which will be relevant to the district court's consideration. In order to facilitate this court's review of the reasonableness of attorneys' fees calculated as a percentage of a common fund, the district court should articulate specific reasons for selecting the percentage upon which the attorneys' fee award is based. The district court's reasoning should identify all factors upon which it relied and explain how each factor affected its selection of the percentage of the fund awarded as fees. See, e.g., Brown, 838 F.2d at 455; Edmonds v. United States, 658 F.Supp. 1126, 1141-46 (D.S.C.1987); Mashburn, 684 F.Supp. at 692-97.
 
 III. CONCLUSION
 
 36
 For the foregoing reasons, we vacate the district court's order utilizing the lodestar and risk enhancement method in calculating the Associations' attorneys' fees in the present case.[7] Upon remand, the district court is directed to determine a reasonable attorneys' fee based upon a percentage of the common fund awarded to the Associations.
 
 
 37
 VACATED and REMANDED for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable Jerre S. Williams, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 [1]
 The underlying facts of this case are set forth in detail in Camden I Condominium Ass'n, Inc. v. Dunkle, 805 F.2d 1532 (11th Cir.1986), cert. denied, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 765 (1987), and need not be restated in this opinion
 
 
 [2]
 The County argues that the attorneys' fees to be awarded in this case are fee-shifting because any funds not disbursed to the Associations and their attorneys revert to the County. We see no merit to the County's argument. The settlement clearly created a common fund for the satisfaction of the County's liabilities
 
 
 [3]
 The twelve factors are:
 (1) the time and labor required;
 (2) the novelty and difficulty of the questions involved;
 (3) the skill requisite to perform the legal service properly;
 (4) the preclusion of other employment by the attorney due to acceptance of the case;
 (5) the customary fee;
 (6) whether the fee is fixed or contingent;
 (7) time limitations imposed by the client or the circumstances;
 (8) the amount involved and the results obtained;
 (9) the experience, reputation, and ability of the attorneys;
 (10) the "undesirability" of the case;
 (11) the nature and the length of the professional relationship with the client;
 (12) awards in similar cases.
 Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir.1974). These factors were reflected in the American Bar Association Code of Professional Responsibility, Disciplinary Rule 2-106 (1980), and are currently reflected in Model Rules of Professional Conduct Rule 1.5(a).
 
 
 [4]
 Pennsylvania v. Delaware Valley Citizens' Counsel, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987); Pennsylvania v. Delaware Valley Citizens' Council, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986); City of Riverside v. Rivera, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986); Blum v. Stenson, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)
 
 
 [5]
 See, e.g., Mills v. Electric Auto-Lite Co., 396 U.S. 375, 394 n. 18, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970) (citing Hornstein, "Legal Therapeutics: The 'Salvage' Factor in Counsel Fee Awards," 69 Harv.L.Rev. 658 (1956)); Coffee, "Understanding the Plaintiffs' Attorney: The Implications of Economic Theory for Private Enforcement of the Law Through Class and Derivative Actions," 86 Colum.L.Rev. 669, 724-25 (1986); Coffee, "Rescuing the Private Attorney General: Why the Model of the Lawyer as Bounty Hunter is Not Working," 42 Md.L.Rev. 215 (1983); Miller, Attorneys' Fees in Class Actions (Federal Judicial Center 1980)
 
 
 [6]
 The Task Force Report was favorably cited by the Supreme Court in Evans v. Jeff D., 475 U.S. 717, 736-37 n. 28, 106 S.Ct. 1531, 1542 n. 28, 89 L.Ed.2d 747 (1986)
 
 
 [7]
 Because we find that a percentage of the fund analysis should be applied in common fund cases, we need not address the district court's limitation of risk enhancement pursuant to its interpretation of Delaware Valley, 483 U.S. at 732, 107 S.Ct. at 3090. Delaware Valley is not applicable to a common fund case
 Our disposition of this case also obviates the need to address the district court's compensation of counsel for delay in payment by using current hourly rates. We note that this circuit does not mandate any particular method for correcting for delay in payment, Johnson v. University College of the Univ. of Alabama in Birmingham, 706 F.2d 1205 (11th Cir.), cert. denied, 464 U.S. 994, 104 S.Ct. 489, 78 L.Ed.2d 684 (1983), and that the Supreme Court authorized current hourly rates as a method for compensating for time delay in Missouri v. Jenkins, 491 U.S. 274, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989).