[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 31, 2011
JOHN LEY
CLERK

_____

No. 10-12496

_____

D.C. Docket No. 2:07-cv-01928-RDP


LAURA FAUGHT,
STEVEN FAUGHT,
on behalf of themselves and all others similarly situated,

                                        Plaintiffs-Appellees,

JOHN HOWE, et al.,

                                        Intervenors-Plaintiffs,


                    versus


AMERICAN HOME SHIELD CORPORATION,

                                        Defendant-Appellee,


ROBERT SHEPARD,
LUZ SHEPARD,
JANET TZENDZALIAN,
MERLYN D. LIND,
ROSALYN URBANEK,

                                        Interested-Parties-Appellants.

_____

No. 10-12534

_____

D.C. Docket No. 2:07-cv-01928-RDP

LAURA FAUGHT,
STEVEN FAUGHT,
on behalf of themselves and all other similar
situated,

                                                    Plaintiffs-Appellees,

JOHN HOWE, et al.,

                                                    Intervenors- Plaintiffs,

THOMAS ARRINGTON,

                                                    Intervenor Plaintiff-Appellant,

                              versus

AMERICAN HOME SHIELD CORPORATION,

                                                    Defendant-Appellee.

_____

No. 10-12536

_____

D.C. Docket No. 2:07-cv-01928-RDP

2

LAURA FAUGHT,
STEVEN FAUGHT,
on behalf of themselves and all others
similarly situated,

                                         Plaintiffs-Appellees,

JOHN HOWE,
JENNY HILL,
JENNIFER DEACHIN,
MICHAEL MCKERLEY,
KENNETH BEHREND,
PAMELA BEHREND,
JEFF WILLIAMS,
SABRINA WILLIAMS,
JANET K. WOOD,

                             Intervenors-Plaintiffs-Appellants,

THOMAS ARRINGTON, et al.,

                                     Intervenors-Plaintiffs,

                                    versus

AMERICAN HOME SHIELD CORPORATION,

                                    Defendant-Appellee.

_____

Appeals from the United States District Court
for the Northern District of Alabama
_____

(October 31, 2011)

Before DUBINA, Chief Judge, CARNES, Circuit Judge, and SANDS,* District Judge.

DUBINA, Chief Judge:

This appeal is the consolidation of three appeals brought by objectors to a class action settlement. The underlying case involved allegations that American Home Shield ("AHS") engaged in a pattern of wrongly denying claims under its home warranty contracts. Two class action lawsuits resulted from these allegations, the first brought in California state court and this case, originally filed in the Northern District of Alabama. After the California court rejected a proposed settlement in its case, the parties in this case reached a settlement agreement, which the district court approved. Four sets of objectors appeal from the district court's confirmation of the settlement agreement. Their objections fall into the following categories: (1) objections to the class notice, (2) fairness challenges to the settlement, and (3) objections to the attorneys' fees awarded to

---

*Honorable W. Louis Sands, United States District Judge for the Middle District of Georgia, sitting by designation.

class counsel.[1]  For the reasons set forth below, we affirm the judgment of the district court.

## I.

Appellee AHS is in the business of selling, issuing, and administering service contracts for certain home appliances and systems ranging from dishwashers to HVAC systems.  In exchange for a fee, AHS contracted with the home owners to arrange for service technicians from their network to repair or replace the systems and appliances under circumstances specified under the home warranty contracts.  AHS does not directly service or replace any appliance or system covered by the contracts, but separately contracts with service technicians to conduct the work at a reduced rate.

Since 2007, AHS's business practices have been the subject of two class action lawsuits alleging that AHS engaged in a pattern of wrongly denying claims for alleged failure to maintain or clean the system or appliance, deliberately breaching the service contracts, and entering into contracts with service

---

[1]One set of objectors, the Pettitt objectors, failed to receive timely notice of the oral argument scheduled in this case.  As a result, we bifurcated their appeal, Appeal No. 10-12533.  With the exception of one unique issue presented in Appeal No. 10-12533, we took the issues raised by the Pettitt objectors under submission on the briefs and will decide them along with the challenges raised by the three other sets of objectors.  Thus, this opinion addresses all issues presented in the consolidated appeals, save for the question of whether counsel for the Pettitt objectors are entitled to attorneys' fees.

5

technicians that incentivize technicians to find issues with the appliances that fall outside of the service contract.

The first class action complaint was filed in 2007 by Karon and L.B. Chip Edleson against American Home Shield of California in California state court (the "*Edleson* action"). Three months later, Laura and Steven Faught filed their class action complaint in this case. Many of the allegations in the complaint were the same as in the *Edleson* complaint, but the Faughts' putative class was narrower and included "[a]ll persons, who in the last six years, have purchased a residential home warranty contract from AHS applicable to a house within the United States, and within the original contract term of one year, had a claim denied for repair or replacement of a major home component based on an alleged failure to clean or maintain." [R. 1 at 7.] The putative class in *Edleson* extended to "all persons who made a claim under a home warranty insurance plan obtained from [AHS]." [R. 39, Ex. 1.]

The cases progressed in parallel proceedings. The parties in this case began court ordered mediation in September 2008. In November 2008, after being informed that the *Edleson* parties reached a tentative settlement agreement, the district court stayed this case.

In exchange for forfeiting their future rights to sue as a class, the *Edleson* settlement agreement gave the class members the right to resubmit their claims to a Review Desk run by AHS. It did not have any specific standards for adjudicating the claims and did not specify the qualification level for employees assigned to the help desk. The settlement also allowed AHS to offer class members a one year "FlexPlan" extension to their policies at a reduced rate. The settlement included a number of business practice changes including removing incentives from the contracts with service technicians that encouraged them to find problems that would support AHS denying claims under their home warranty contracts. Attorneys' fees under that agreement were set at $2.5 million and did not include any portion of the money received by the class members through the Review Desk.

After a fairness hearing, the *Edleson* court rejected the settlement. Chief among the *Edleson* court's concerns was that the settlement gave AHS the right to readjudicate claims. The court expressed concern that the class members would be giving up "viable" and "realistic" rights in exchange only for the hope "that a defendant that has allegedly not acted in good faith" would now act in good faith. The court was especially troubled by the fact that class members' rights to sue in the future might be limited based on the applicable statute of limitations. The

*Edleson* court also disapproved of a provision that allowed AHS to sell additional coverage to class members during the resubmission process, noting "[t]his allows [AHS] to make additional money from the settlement rather than paying it out to plaintiffs." The *Edleson* court concluded: "Without more concrete guarantees, plaintiffs . . . have gotten very little in return for a waiver of claims against [AHS]. . . . Any settlement must give the plaintiff class some tangible benefits or an unfettered right to bring legal claims against [AHS]."

Immediately following the *Edleson* court's rejection of the proposed settlement, two things happened: (1) the parties in this case resumed their mediated settlement negotiations, and (2) the *Edleson* plaintiffs moved for an injunction requiring AHS to keep records of denied claims and to amend their contracts with the service providers to delete any incentives to deny claims. Soon after, the *Edleson* court conducted a hearing on the request for the injunction. Before the *Edleson* court ruled on the injunction, however, AHS reached a tentative settlement agreement in this case. As a result, the *Edleson* court stayed its proceedings to permit the district court an opportunity to make a fairness determination on the proposed agreement.

Based on the outcome of settlement negotiations, the Faughts amended their class action complaint to include "[a]ll persons who have held a residential home

warranty contract from AHS applicable to a house within the United States at any time since June 21, 2001." The settlement agreement has several broad similarities with the proposed *Edleson* settlement agreement, including the proposed business practice changes and use of an AHS-run Review Desk for the resubmission of denied claims. As part of the settlement, class members forfeit their right to participate in class action lawsuits against AHS and instead must pursue any future claims in individual lawsuits. In exchange, they receive a number of benefits, including the right to resubmit claims to the Review Desk, staffing requirements designed to make the Review Desk more effective, and litigation incentives aimed at ensuring that AHS treats claimants fairly. Class counsel and AHS separately negotiated the class counsel's fee award. That award included a $1.5 million lump sum payment plus 25% of class members' cash awards from the Review Board process.

In granting preliminary approval of the settlement, the district court determined that the proposed settlement is significantly more beneficial to class members than the *Edleson* settlement and ordered notice be sent to the class members. In total, 1,543 class members requested exclusion or potential exclusion for an opt-out rate of 0.033%. Twenty-four class members and the State of Texas filed objections.

9

After conducting a fairness hearing, the district court approved the settlement, but reserved ruling on a provision that allowed the Faughts to bypass the Review Desk procedures established by the settlement and to collect a lump sum payment for their claims. The lump sum payment was in addition to the $10,000 incentive payment provided for the class representatives in the settlement. The district court also reserved ruling on objections to class counsel's fees.

By separate order, the district court addressed the objections to the Faughts' incentive payments, the provision that allowed them to bypass the Help Desk, and the objection to class counsel's fee award. The district court upheld the $10,000 incentive payment to the Faughts, but struck the settlement provision that awarded the Faughts $8,000 for their claims and exempted them from seeking relief through the Review Desk, aptly noting "if the Review Desk process is good enough for the Class, it is good enough for the Faughts." [R. 107 at 13.] The district court also determined that the $1.5 million fee plus 25% of any payments made to class members by the Review Desk was a reasonable fee.

Four sets of objectors filed appeals: (1) Todd Pettitt, Sharon Lee, Miriam Chapon, and John Chapon (the "Pettitt objectors"); (2) Robert Shepard, Luz Shepard, Janet Tzendzalian, Merlyn Lind, and Rosalyn Urbanek (the "Shepard objectors"); (3) John Howe, Jenny Hill, Jennifer Deachin, Michael McKerley,

10

Kenneth Behrend, Pamela Behrend, Sabrina Williams, Jeff Williams, and Janet Wood (the "Howe objectors"); and (4) Thomas Arrington. Their objections fall into the following categories: (1) objections to the class notice, (2) fairness challenges to the settlement, and (3) objections to the attorneys' fee award to class counsel.

## II.

This court reviews a district court's confirmation of a class action settlement agreement for an abuse of discretion. *In re CP Ships Ltd. Sec. Litig.*, 578 F.3d 1306, 1308 (11th Cir. 2009) (abrogated on other grounds by *Morrison v. Nat'l Australia Bank Ltd.*, ___ U.S. ___, 130 S. Ct. 2869 (2010)). The "'[p]roponents of class action settlements bear the burden of developing a record demonstrating that the settlement distribution is fair, reasonable and adequate.'" *Id*. (quoting *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983)).

## III.

A.    <u>Notice</u>

Federal Rule of Civil Procedure 23 governs class notice requirements. The standard for the adequacy of a settlement notice in a class action is measured by reasonableness. *See* Fed. R. Civ. P. 23(e). We have interpreted Rule 23 to require that class members be given "information reasonably necessary to make a decision

[whether] to remain a class member and be bound by the final judgment or opt out of the action," though the notice need not include "every material fact" or be "overly detailed." *In re Nissan Motor Corp. Antitrust Litigation*, 552 F.2d 1088, 1104–1105 (5th Cir. 1977).[2] In fact, we have recognized that "an overly detailed notice" has the potential to "confuse class members and impermissibly encumber their rights to benefit from the action." *Id*. at 1104.

The Shepard and Howe objectors contend that the class notice was insufficient because it failed to fully inform class members about the reasons that the proposed settlement in *Edleson* was not accepted by the California state court. The Shepard objectors also contend that the notice should have informed class members that there was a motion for a temporary restraining order pending in *Edleson*. At oral argument, the objectors suggested we hold that such information is necessary where the current settlement offer and the previously rejected settlement offer reached in the parallel proceedings are "materially" or "substantially" similar. As discussed in more detail in Section III.B., we do not agree with the objectors' premise that the two agreements are substantially similar

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 & 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

and conclude that, whatever the similarities between the proposed settlements, the district court did not abuse its discretion in approving the class notice.

The class notice includes the following reference to the *Edleson* settlement:

> You may have received a separate settlement notice earlier this year relating to another case (Edleson v. American Home Shield of California and American Home Shield Corporation, Case No. 37-2207-0007125-CU-BT-CTL, pending in the Superior Court of the State of California for the County of San Diego). The Edleson settlement has been terminated, and is no longer in effect. This settlement relates to this case, which is different from the Edleson case.

Although class members might have benefitted from further information about why the *Edleson* settlement was "terminated," our review is limited to whether the district court abused its discretion in declining to require that the notice include such information. We conclude that it did not. The notice makes clear that the proposed *Edleson* settlement was no longer in effect and would not provide class members any relief. Further, the notice contains detailed information regarding claims covered by the settlement agreement and the proposed process for adjudicating claims. It also provides information regarding opt-out procedures and instructions for accessing a website established for the purpose of providing additional information regarding the proposed settlement. Thus, while it would be easy to point to any number of additional data points that could have been

13

included in the notice, we conclude that the district court did not abuse its discretion in finding that the reference to the *Edleson* agreement and the other information outlined above provided reasonable notice under the circumstances.

B.    The Settlement

"In reviewing the validity of a class action settlement, a district court's decision will be overturned only upon a clear showing of abuse of discretion." *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983).  The district court reviews a class action settlement for fairness, reasonableness, and adequacy. *In re CP Ships Ltd. Sec. Litig.*, 578 F.3d at 1314–15 (citing *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)).  We have instructed the district court to consider the following factors: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.  *Id.* at 1315.

Many of the objectors' arguments regarding the fairness of the settlement rely upon the alleged similarity between the *Edleson* settlement and this settlement, which, as noted above, we find far less striking than the objectors allege.  The following is a non-exhaustive list of material differences between the

14

two settlements relied upon by the district court in finding, "[t]here are valuable aspects of this Settlement that simply were not present in the previously-rejected *Edleson* settlement." [Dist. Ct. Op., R. 105 at 9.]

1.     Review Desk employees are required to have 3 years of experience, whereas the *Edleson* agreement contained no stipulated qualifications for its employees.

2.     The settlement obligates AHS to add additional customer service employees to the Review Desk if after 150 days AHS has failed to respond to 40% of the claims within 90 days of submission.  Five new representatives are required for every 2,500 overdue submissions until 85% of all claims are responded to within 90 days.  The *Edleson* agreement did not provide for additional customer service representatives in the event of delays.

3.     Review Desk employees are required to adhere to the following guideline in adjudicating claims:

> Prior denials (in whole or in part) of claims relating to a failure of a covered heating or air conditioning system during the first year of a customer's contract with AHS shall be overturned if such claims were denied outright solely because of lack of annual maintenance (i.e. maintenance that the manufacturer recommends be done annually), *provided however*, that AHS shall retain the discretion to consider any relevant factor to determine the type or amount of relief to be offered to the customer in the event of such overturning; *provided further* that AHS may consider other relevant factors under

15

the contract in deciding whether or not to overturn a denied claim, including evidence (of any type) of lack of maintenance in any time period which, in AHS's good faith judgment, is such as to rise to the level of abuse by cumulative neglect.

[R. 37-1 at 51 (emphasis in original).] The *Edleson* agreement contained no specific guidelines to assist Review Desk employees in adjudicating claims.

4. The settlement contains a number of litigation kickers that create strong incentives for AHS to properly settle claims through the Review Desk process. The settlement allows HVAC claimants represented by counsel who are awarded more in a post-submission suit than was offered by the Review Desk to recover attorneys' fees in addition to any compensatory award. Attorneys' fees in those suits are capped at $5,000 or three times the difference between the compensatory damages awarded in the suit and the total value of the offer made by the Review Desk, whichever is greater. Unrepresented HVAC claimants and all other appliance claimants are entitled to a lump sum payment of $1,000 if they are awarded more in a post-submission suit than they were offered through the Review Desk. The *Edleson* settlement did not contain any litigation kickers.

5. The settlement does not require class members to wait 120 days from their submission to the Review Desk to file suit. Class members have the option

16

of forgoing the Review Desk process altogether and may file an individual lawsuit.

Despite the substantial differences between the two settlements, the objectors continue to focus on one similarity—the Review Desk—and ignore the provisions that either require or incentivize the Review Desk to handle claims properly. The objectors continue to argue that it is improper to put AHS in charge of doling out the money because it has already demonstrated that it is incapable of fairly adjudicating claims. They claim the improvements are merely "window dressing." We disagree. The district court's thorough discussion of many of the settlement's provisions demonstrates that it fully understood the settlement and did not abuse its discretion in finding the settlement contained "valuable improvements" over the *Edleson* settlement.

The Pettitt objectors suggest that the district court failed to adequately consider the protections available to class members under various state consumer protection laws before concluding that the settlement is fair. They contend the settlement is unreasonable because it strips class members of their class rights while failing to resolve their individual claims. For example, the objectors contend that California class members will forfeit the protections of the attorneys' fees and class provisions in California's Consumers Legal Remedies Act

("CLRA"), Cal. Civ. Code § 1750 *et seq.*, and that the settlement does not adequately compensate them for the forfeiture of those protections.[3]

We find these arguments unconvincing as California class members, like all class members, were free to opt out of the class and still have the option of forgoing the Review Desk and filing an individual suit under their state consumer protections statutes. If, however, they decide to resubmit their claims to the Review Desk, as found by the district court, "[c]lass [m]embers stand to receive full compensation for their claims . . . rather than mere pennies on the dollar for a uniform cash payment." [Dist. Ct. Op., R. 105 at 8.]

The Shepard objectors also contend that the settlement is void because, at the time the settlement was originally reached, AHS did not have the authority to enter into the settlement without the consent of the Edlesons' counsel. This argument derives from the terms of a letter agreement between the Edlesons' counsel and AHS which they allege prevented AHS from settling this case without their consent. The Shepard objectors also cite a provision from the *Edleson* settlement that they claim left the *Edleson* settlement in effect until written notice of termination was filed. Accordingly, they argue that the *Edleson* agreement did

---

[3]At times, the Pettitt objectors attempt to frame this argument as a challenge to the district court's findings with respect to predominance and superiority. The objectors have failed to demonstrate that variations between state consumer protection laws undermine those findings.

18

not terminate when the court rejected the settlement, but remained in effect until it was formally terminated several days later, which was after AHS and the Faughts signed this settlement agreement.

We conclude from the record that the district court correctly determined that upon the California court's rejection of the *Edleson* settlement, the proposed settlement, the letter agreement, and counsel's status as "class counsel" or "lead counsel" were rendered void. Therefore, AHS was not obligated to seek counsel's approval prior to reaching this settlement agreement.

C. Class Counsel's Fee Award

We review a district court's award of attorneys' fees for abuse of discretion. *Camden I Condo. Assoc., Inc. v. Dunkle*, 946 F.2d 768, 770 (11th Cir. 1991). "The district court 'has great latitude in formulating attorney's fees awards subject only to the necessity of explaining its reasoning so that we can undertake our review.'" *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1293 (11th Cir. 1999) (quoting *McKenzie v. Cooper, Levins & Pastko, Inc.*, 990 F.2d 1183, 1184 (11th Cir. 1993)).

"[A]ttorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774. And this court has often stated that the majority of

19

fees in these cases are reasonable where they fall between 20-25% of the claims. *Id*. Where the requested fee exceeds 25%, the court is instructed to apply the twelve *Johnson* factors. *Id*. The *Johnson* factors include: (1) the time and labor required; (2) the difficulty of the issues; (3) the skill required; (4) the preclusion of other employment by the attorney because he accepted the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3, 103 S. Ct. 1933, 1938 n.3 (1983) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974)).

As discussed above, the district court approved an attorneys' fee award with two components: (1) a $1.5 million lump sum paid directly by AHS to class counsel as payment for the business practice changes researched and negotiated by class counsel for the benefit of the class, and (2) 25% of the monetary compensation received by class members through the Review Desk process.

In approving the fee award, the district court began by citing well-settled law from this court that 25% is generally recognized as a reasonable fee award in

20

common fund cases. *See, e.g., Waters*, 190 F.3d at 1294 ("The majority of common fund fee awards fall between 20% to 30% of the fund."). The district court did not separately analyze whether the 25% awarded here was a reasonable fee in itself, but determined that because 25% is generally accepted as reasonable in common fund cases, *see Camden I*, 946 F.2d at 774, it should also be considered reasonable in this case. The district court then turned its attention to the $1.5 million lump sum award that took the total fee award above the 25% benchmark and thoroughly analyzed that amount under the *Johnson* factors. The district court also pointed out that to the extent the $1.5 million made the total fees exceed 25% of the common fund, it should not be viewed negatively for two reasons. First, the $1.5 million did not come from the money set aside for the class; rather, it is a separate lump sum from AHS to class counsel. Second, the district court noted that the $1.5 million was intended to compensate class counsel for additional work performed and value added to the settlement, specifically, the work done in changing AHS's business practices and in establishing a state of the art center to field class member inquiries regarding the settlement. The court calculated the hours and the rates of the attorneys and staff working on the claims and determined that the $1.5 million was a very small amount compared to the amount of money invested in the case.

21

The district court fully examined all of the relevant factors and law in assessing the attorneys' fee award. The district court cited relevant precedent from our circuit and others that detailed fee awards in other class action lawsuits. The court discussed in detail the work plaintiffs' counsel did for the class, outlining the numbers of phone calls, emails, and letters they received and answered. Although not detailed in the order, the district court also devoted a significant amount of time at the fairness hearing to receiving testimony on the value class counsel added to the settlement by continuing to negotiate with AHS and its counsel regarding changes in business practices. Those practices continue to be implemented and negotiated. The district court considered and discussed in detail each of the twelve *Johnson* factors.

The objectors contend that the fixed fee of $1.5 million puts this case outside of the 25% fee that this circuit has said is the benchmark. The objectors also point out that because there is no fixed common fund established by this settlement, there is no way to determine by what percentage the additional $1.5 million increases the attorneys' fee award. These arguments ignore the district court's finding that the $1.5 million payment is designed to compensate the class counsel for the non-monetary benefits they achieved for the class—like company-

22

wide policy changes and appliance and system replacements and repairs, to which the 25% fee is not applied.

The Shepard objectors argue that the fee is unfair because it allows class counsel to profit from the work of another law firm, specifically the firm that represented the *Edleson* plaintiffs. Notably, counsel for the Shepard objectors is the attorney who represented the *Edleson* plaintiffs. Although it may be the case that some of the work done in reaching this particular settlement was aided by the work performed by the Edlesons' attorneys, that does not make the fee awarded to class counsel unreasonable. As is clear from the previous discussion, this settlement contains a number of new provisions that add significant value to the settlement.

Finally, the Shepard objectors contend that the fees are unfair because they are different than the fee structure in the *Edleson* settlement, a $2.7 million flat fee. This argument fails to present any legal basis for rejecting the fee award. To the extent the Shepard objectors are interested in saving AHS money, we find their concern unnecessary. If, however, they are concerned about collusion, the district court considered all the facts and circumstances and found that there had been no collusion. Its finding is not clearly erroneous.

IV.

23

For the reasons given above and those stated in the well-reasoned opinion entered by the district court, we affirm the judgment of the district court.

**AFFIRMED.**