08-4904-cv
*In Re: Adelphia Communications Corp.*
*Securities & Derivative Litigation (No. II) v.*

## UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

————————————

August Term, 2010

(Argued: November 18, 2009                    Decided: October 14, 2010)

Docket No. 08-4904-cv

————————————

ALVIN VICTOR, WILLIAM D. HUHN, HARRIET G. VICTOR,

*Plaintiffs-Appellants*,

— v .—

ARGENT CLASSIC CONVERTIBLE ARBITRAGE FUND L.P., ELKMONT CAPITAL LIMITED, UBS
O`CONNOR LLC., ARGENT LOWLEV CONVERTIBLE ARBITRAGE FUND LTD., ARGENT CLASSIC
CONVERTIBLE ARBITRAGE FUND [BERMUDA] L.P., EMINENCE CAPITAL, L.L.C.,

*Plaintiffs-Appellees*,

NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM, ET AL.,

*Defendants*.

Before:  SACK, B.D. PARKER, WESLEY, *Circuit Judges*.

————————————

Appeal from a post-judgment order of the United States District Court for the Southern

District of New York (McKenna, *J.*) denying non-lead class counsel's petition for increased

attorneys' fees.  **AFFIRMED**.

————————————

NICHOLAS E. CHIMICLES (Kimberly M.
Donaldson, Denise Davis Schwartzman, and
Kimberly L. Kimmel, *on the brief*),

Chimicles & Tikellis LLP, Haverford, PA, *for Plaintiffs-Appellants*

ROGER W. KIRBY, Kirby McInerney LLP, New York, NY (Richard L. Stone, Mark A. Strauss, and Rebecca Song, Paralegal, Kirby McInerney LLP, New York, NY; Arthur N. Abbey, Judith L. Spanier, and Richard B. Margolies, Abbey Spanier Rodd & Abrams, LLP, New York, New York, *on the brief*), *for Plaintiffs-Appellees*

—————————————

BARRINGTON D. PARKER, *Circuit Judge*:

Under the common fund doctrine, attorneys who create a fund for the benefit of a class of plaintiffs are entitled to reasonable compensation from that fund. Plaintiffs-Appellants, represented by the firm of Chimicles & Tikellis LLP ("C&T"), filed two class action complaints alleging securities fraud by Adelphia Communications Corporation. The class action complaints were consolidated with other securities class actions filed against Adelphia, and Abbey Spanier Rodd & Abrams, LLP ("Abbey") and Kirby McInerney LLP ("Kirby") were appointed lead counsel. The class ultimately reached a settlement of $245 million with a number of Adelphia's lenders and underwriters. From that amount, the United States District Court for the Southern District of New York (McKenna, *J.*) awarded lead counsel $52.4 million in attorneys' fees, a substantial multiplier over their lodestar amount. Abbey and Kirby then allocated $155,610 of the attorneys' fees award to C&T, an amount that represents C&T's lodestar with no multiplier. C&T petitioned the District Court for an increase to $17 million in fees, arguing that but for the claims it had raised, a settlement would not have been reached. The District Court denied C&T's request. This appeal followed. We affirm.

## BACKGROUND

In March 2002, Adelphia, a large cable television provider, disclosed that it had incurred $2.3 billion in previously undisclosed, off-balance sheet debt arising from widespread self-dealing by various members of the Rigas family, who were Adelphia's founders and controlling shareholders. Adelphia's disclosures precipitated numerous lawsuits and, beginning in April 2002, more than thirty individual and class action law suits were filed in the United States District Court for the Eastern District of Pennsylvania against Adelphia and its officers, directors, auditors, underwriters, and lenders.

In June 2002, C&T filed a lawsuit in the Eastern District of Pennsylvania styled *Victor v. Adelphia Communications Corp.*, 02-cv-3659 ("*Victor I*"), on behalf of investors who purchased certain Adelphia Notes between January 2001 and May 2002. That same month, C&T filed another complaint, *Huhn v. Rigas*, 02-cv-4334 ("*Victor II*"), on behalf of investors who purchased the same Notes between March 2002 and June 2002. Together, the *Victor* complaints alleged that Solomon Smith Barney ("SSB") and Bank of America Securities ("BAS"), Adelphia's lead underwriters, violated §§ 11 and 12(a)(2) of the Securities Act by making untrue statements or omissions of material fact in a 1999 Registration Statement underlying the Notes' offerings. On June 7, 2002, the same day that C&T filed *Victor I*, a law firm not party to this appeal filed *W.R. Huff Asset Management Co., LLC v. Deloitte & Touche, LLP*, No. 02-cv-0417 ("*Huff*"), in the Western District of New York, also alleging, among other things, that BAS and SSB violated §§ 11 and 12 of the Securities Act.

In July 2003, the Panel on Multidistrict Litigation transferred the various suits against Adelphia to the Southern District of New York, where they were consolidated. *Huff* was also

-3-

transferred to the Southern District of New York but was not consolidated. In December 2003, the District Court entered an order appointing Argent/UBS Group and Eminence Capital, LLC lead plaintiffs and the Abbey and Kirby law firms lead counsel. Lead plaintiffs then filed a consolidated complaint on behalf of a class whose members bought Adelphia debt and securities between August 1999 and June 2002. The consolidated complaint incorporated the *Victor* complaints' §§ 11 and 12 claims against SSB and BAS. The complaint also added certain new §§ 10(b), 11, and 12 claims against SSB, BAS, and other underwriters and lenders not previously named in any of the *Adelphia* actions. Additionally, the complaint asserted claims arising under the Exchange Act, the Trust Indenture Act of 1939, and state common law.

Under the Securities Act, claims are time-barred unless they are brought "within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, [and within] three years after the security was bona fide offered to the public." 15 U.S.C. § 77m. Similarly, under the Exchange Act, claims are time-barred unless they are brought "within one year after the discovery of the facts constituting the cause of action and within three years after such cause of action accrued." 15 U.S.C. § 78r(c).

In March 2004, the bank defendants to the consolidated complaint moved to dismiss most of the complaint as time-barred. Notably, the bank defendants did not challenge the timeliness of the §§ 11 and 12 claims in the *Victor* complaints. The District Court granted the bank defendants' motion. *See In re Adelphia Commc'ns Corp.*, No. 03 MD 1529, 2005 WL 1278544, at *20 (S.D.N.Y. May 31, 2005). However, the District Court ruled that under Fed. R. Civ. P. 15, the consolidated complaint's § 11 claims related back to the § 11 claims originally asserted against

-4-

SSB and BAS in the *Victor* complaints to the extent that existing plaintiffs were asserting the claims. *Id.* at *16.[1] Thus, the only securities claims to survive dismissal were the *Victor* complaints' §§ 11 and 12 claims against BAS and SSB and the new § 11 claims against BAS and SSB that related back to the *Victor* complaints.

In June 2006, lead counsel and the bank defendants entered into a $245 million cash settlement, which provided that lead counsel would have the discretion to allocate court-awarded attorneys' fees among the other class counsel. After the District Court preliminarily approved the settlement, C&T petitioned the court for attorneys' fees of $17,476,500, or one-third of the aggregate fees award attributable to the bank settlement, arguing that the *Victor* complaints were "solely responsible for the entire recovery from the [bank defendants]" because the complaints "preserved the only viable securities claims asserted against SSB and BAS."

In November 2006, the District Court denied C&T's petition, approved the settlement, and awarded lead counsel $52.4 million in attorneys' fees (or 21.4% of the settlement), representing a lodestar (hours times ordinary rates) multiplier of 2.89. The District Court also directed lead counsel to allocate fees to C&T, subject to later review by the court. Accordingly, lead counsel allocated C&T $155,610 (or % 0.29 of the total attorneys fees awarded), corresponding to C&T's lodestar with no multiplier, for the work C&T performed prior to the appointment of lead counsel. The District Court approved this allocation, finding that it was reasonable under the factors

---

[1] Specifically, the District Court found that the § 11 claims, which challenged the October 1999, November 1999, and September 2000 offerings, related back to the *Victor* complaints' claims challenging the January 2001 offering because the October 1999, November 1999, and September 2000 offerings were made pursuant to the same registration statement and prospectus underlying the January 2001 offering. *In re Adelphia Commc'ns Corp.*, No. 03 MD 1529, 2005 WL 1278544, at *16 (S.D.N.Y. May 31, 2005).

outlined in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).[2]  This

appeal followed.  We review a district court's award of attorneys' fees for abuse of discretion,

asking whether the court made "a mistake of law or clearly erroneous factual finding."  *Id.* at 47.

This deferential standard "takes on special significance when reviewing fee decisions."  *Id*.

### DISCUSSION

The District Court determined that in order to receive compensation for its work prior to

the appointment of lead plaintiffs, C&T must have conferred a substantial benefit on the class.  *In*

*re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*, No. 03 MDL 1529, 2008 WL 4128702, at

*3 (S.D.N.Y. Sept. 3, 2008) (citing *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 195 (3d Cir.

2005) ("*Cendant II*").  The District Court observed that the consolidated complaint's inclusion of

the §§ 11 and 12 claims benefitted the class and noted that Abbey and Kirby had provided C&T

with some compensation in view of that fact.  However, the District Court declined to disturb lead

counsel's fees allocation and found that an award representing C&T's pre-appointment lodestar

was adequate.  *Id.* at *4.

On appeal, C&T contends that the District Court erred by approving lead counsel's

allocation and, in so doing, grossly undercompensated it.  Specifically, C&T contends that the

District Court misapplied the *Goldberger* factors and maintains that without the §§ 11 and 12

claims raised in the *Victor* complaint, there would have been no settlement.  Although Abbey and

---

[2]  In *Goldberger v. Integrated Resources Inc.*, we directed district courts to consider the
following set of factors when approving a fees award: (1) the time and labor expended by
counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the
quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy
considerations.  *See* 209 F.3d 43, 50 (2d Cir. 2000); *McDaniel v. County of Schenectady*, 595
F.3d 411, 423 (2d Cir. 2010).

Kirby were no doubt on the stingy side when it came to compensating their brethren, we have not been convinced that the District Court abused its discretion in approving class counsel's allocation.

It is well established that the common fund doctrine permits attorneys whose work created a common fund for the benefit of a group of plaintiffs to receive reasonable attorneys' fees from the fund. *In re Zyprexa Prods. Liab. Litig.*, 594 F.3d 113, 128-29 (2d Cir. 2010) (per curiam); *Goldberger*, 209 F.3d at 47. Class action lawsuits are the prototypical example of instances where the common fund doctrine can apply.

We have not had occasion to decide the proper framework for awarding attorneys' fees to non-lead counsel under the Private Securities Litigation Reform Act ("PSLRA") for work completed prior to the appointment of lead plaintiff. Securities litigation is often an entrepreneurial exercise in which multiple attorneys file complaints in the hopes of ultimately being appointed lead counsel. *See Cendant II*, 404 F.3d at 196. Prior to the appointment of lead plaintiff, complaints filed in putative securities class actions can be duplicative and can artificially increase the number of plaintiffs and attorneys involved in the litigation. Such overlap may be of questionable benefit to the class. *See id.*; *see also In re Auction Houses Antitrust Litig.*, No. 00 CIV. 0648, 2001 WL 210697, at *4 n.7 (S.D.N.Y. Feb. 26, 2001). Here, for example, attorneys filed over thirty putative class action complaints that were eventually consolidated before the Multdistrict Panel.

Additionally, many complaints filed by potential lead counsel rely on fairly routine legal analysis rather than on inventive legal theories, and are based on publicly reported information or disclosures rather than on intensive fact-finding. *See, e.g.*, *In re Auction Houses Antitrust Litig.*, 2001 WL 210697, at *4 (declining to award attorneys' fees to applicants who "no doubt saw *The*

*New York Times* or subsequent articles and, rather than simply advising his or her client to participate in the class action, filed an entirely duplicative complaint that served no real purpose"). Furthermore, as C&T acknowledges, it is common practice for lead counsel to borrow legal principles from the complaints filed prior to the appointment of lead plaintiff. Here, for example, the District Court observed that the consolidated complaint closely incorporated swaths of the *Huff* complaint. *In re Adelphia Commc'ns Corp.*, 2005 WL 1278544, at *8. As our Sister Circuit observed in *Cendant II*, non-lead counsel is not entitled to significant compensation if it merely "advance[d] a legal theory that is apparent to all lawyers involved." 404 F.3d at 205. And certainly, non-lead counsel is not automatically entitled to an award from a common fund each time one of its claims is utilized in the complaint that lead counsel ultimately files.

At the same time, however, work completed by non-lead counsel prior to the appointment of lead plaintiff can confer substantial benefits on the class. For instance, potential lead counsel may conduct significant factual investigations, perform legal research on novel or innovative theories, and make strategic legal decisions affecting the content of the complaints and the ultimate course of the litigation. *See id.* at 194. In such instances, when a substantial benefit has been conferred on the class, non-lead counsel are entitled to reasonable compensation.

The District Court did not dispute that C&T provided a substantial benefit to the class, and C&T was accordingly allocated $155,610 as compensation for its pre-appointment work. This amount, the District Court ruled, was both fair and consistent with the *Goldberger* factors, the cardinal principle of which is that fees must be "reasonable." *Goldberger*, 209 F.3d at 50. In reaching that conclusion, the District Court considered C&T's pre-appointment lodestar, noting that although the lodestar is not dispositive, it is an important factor when determining whether a

fees award for pre-appointment work by non-lead counsel is reasonable. *In re Adelphia*, 2008 WL 4128702, at \*4.

According to C&T, this reliance on the lodestar and the *Goldberger* factors constituted an abuse of discretion. While a lodestar baseline might be appropriate for awarding fees to lead counsel under the PSLRA, C&T argues, a lodestar-driven analysis should not be applied where non-lead counsel seeks an attorneys' fees award for its pre-appointment work. For instance, considering the lodestar would routinely undercompensate non-lead counsel because its work is often completed during the relatively compact period of time prior to the appointment of lead plaintiff. Therefore, C&T argues, the District Court should have followed the example set forth by the Third Circuit in *Cendant II*, which it argues, did not recognize the lodestar as an element bearing upon the award of attorneys' fees to non-lead counsel.

Furthermore, C&T contends, the *Goldberger* factors are intended to facilitate the review of fees awards to *lead* counsel where a case has proceeded through the course of litigation to a conclusion. However, C&T maintains, the factors are ill-suited to assess reasonable attorneys' fees where *non-lead* counsel has provided a substantial benefit during the early stages of class litigation. Given these limitations, C&T argues, the District Court should have made a "qualitative comparison between non-lead counsel's contribution and other counsel's contribution to the ultimate recovery." Appellant Br. 35. According to C&T, if the District Court had conducted even a cursory analysis of the benefits C&T conferred compared to those conferred by lead counsel, it would have concluded that "the benefit C&T conferred was demonstrated and substantial, and its contribution in achieving the [settlement] eclipsed all others." *Id*.

C&T's arguments conflate two issues: (1) the standard that a district court should use when determining whether non-lead counsel has provided a compensable, substantial benefit to the class, and (2) the standard that a district court should use when awarding reasonable attorneys' fees to non-lead counsel, once non-lead counsel has demonstrated that it provided a compensable, substantial benefit to the class. A qualitative comparison between non-lead and lead counsels' work products is certainly appropriate when determining whether non-lead counsel has provided a substantial benefit to the class. For instance, comparing the complaint filed by non-lead counsel with other complaints filed in the action, including the complaint filed by lead counsel, will often show whether non-lead counsel contributed important factual information or innovative or novel legal theories.

However, where, as here, a district court has determined that non-lead counsel provided the class with a substantial benefit, the court must still assess whether class counsel's quantification of the benefit is "reasonable." In this effort, an examination of the lodestar is both relevant and useful. *See Goldberger*, 209 F.3d at 50 ("[W]e encourage the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage."); *see also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995) ("The court may however, as a check, want to use the lodestar method to assure that the precise percentage awarded does not create an unreasonable hourly fee.").

Furthermore, the *Goldberger* factors are sufficiently flexible to accommodate a variety of circumstances and district courts enjoy wide discretion in applying them. Here, our review of the record yields no indication that the District Court abused its discretion by finding that Abbey and Kirby's allocation of fees to C&T was appropriate in light of those factors. For instance, the first

-10-

*Goldberger* factor alone, the time and labor expended by counsel, weighs heavily against C&T, given that it was looking to be paid $17 million in attorneys' fees for 381.1 hours of work. Forty-five thousand dollars per hour seems to us to be quite high regardless of a lawyer's talent, ability, or contribution to a common fund. Furthermore, as the District Court observed, the sixth *Goldberger* factor, "public policy considerations," weighs against C&T as well:

> Upon the breaking of news of perceived fraud involving potentially large damages, the old "race-to-the-courthouse system" would likely gain new life if counsel thought that being first with some claim or other could, possibly, result in a fee of lodestar times a large multiple even though counsel were not the choice of lead plaintiffs.

*In re Adelphia*, 2008 WL 4128702, at *4 (internal citation omitted); *see also Goldberger*, 209 F.3d at 50.

C&T's other arguments do not persuade us that the District Court abused its discretion. For example, the District Court found that the benefit C&T conferred to the class was not "so unique that it can be fairly said that there would have been no settlement of the magnitude achieved without it," and determined that the *Victor* complaints' inclusion of §§ 11 and 12 claims against SSB and BAS did not "represen[t] ground-breaking legal or factual analysis." *In re Adelphia*, 2008 WL 4128702, at *4 (citations omitted). According to C&T, requiring that non-lead counsel's benefit be "ground-breaking" or "so unique" is too exacting a standard. While we can imagine circumstances where such a standard would be too demanding, surely counsel seeking to be compensated at $45,000 per hour can not be heard to complain about being held to too high a standard.

Additionally, C&T contends that the District Court contradicted the record and constructed a "bridge to nowhere" when it found that "[e]ven if the *Victor* [complaints] had never been filed . .

-11-

. Lead Counsel would in all likelihood have noticed [§§ 11 and 12(a)(2)'s] use in the *Huff* complaint." Appellant Br. 26 (citing *In re Adelphia*, 2008 WL 4128702, at *4). According to C&T, the District Court's reference to the *Huff* complaint was inappropriate because the District Court had previously concluded that the *Huff* complaint was a triggering event that put lead counsel on inquiry notice of the wrongdoing of the bank defendants. *See In re Adelphia*, 2005 WL 1278544, at *7-*8. However, the District Court was entitled to make reference to the *Huff* complaint, as its inclusion of the same §§ 11 and 12 claims as the *Victor* complaints undermines C&T's assertion that its use of those claims resulted from factual discoveries or the formulation of legal theories sufficiently unique or complex as to warrant an exceptional fees award. Nor do we believe that the District Court abused its discretion when it concluded that "C&T's contribution was not in any way so unique that it can be fairly said that there would have been no settlement of the magnitude achieved without it." *In re Adelphia*, 2008 WL 4128702, at *4. According to C&T, lead counsel concedes that the *Victor* complaints preserved certain causes of action. Nevertheless, it was still well within the District Court's discretion to determine that a fee application containing a lodestar multiplier of 110 is, *prima facie*, "simply not reasonable." *Id*. After all, as we have stated, "a big recovery does not necessarily justify a . . . multiplier." *Goldberger*, 209 F.3d at 56.

Finally, C&T argues that the District Court failed to discharge its duty to ensure that it was fairly compensated for the benefit it conferred to the class by "rubber stamping" lead counsel's allocation of fees to C&T. We recognize that lead counsel has an incentive to undercompensate non-lead counsel, as such compensation typically decreases lead counsel's own recovery. *See In re Diet Drugs (Phentermine/Fenfluramine/Dexfenflurammine) Prods. Liab. Litig.*, 401 F.3d 143, 173 (3d Cir. 2005) (Ambro, J., concurring) ("[Lead counsel] make recommendations on their own

fees and thus have a financial interest in the outcome. How much deference is due the fox who recommends how to divvy up the chickens?"). However, contrary to C&T's assertions, the District Court engaged in a reasonable analysis of C&T's fees request, concluding that its contributions did not support its requested fee. Since lead counsel is typically well-positioned to weigh the relative merit of other counsel's contributions, it is neither unusual nor inappropriate for courts to consider lead counsel's proposed allocation of attorneys fees, particularly in the PSLRA context, where the district court retains the ultimate power to review applications and allocations and to adjust them where appropriate. Suffice it to say that a standard counseling consideration of lead counsels' allocation of fees does not in any way limit the district court's ability to engage in a meaningful review of the fairness of the allocation and the overall reasonableness of fees. Since our review of the record leads us to conclude that such a review occurred here, we see no abuse of discretion.

## CONCLUSION

The decision of the District Court is AFFIRMED.