[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11019

_____

STEVEN ARKIN,
ANDERSON & WANCA,

Plaintiffs-Appellants,

WILLIAM P. SAWYER,

M.D., individually and as the representative of a
class of similarly-situated persons, et al.,

Consolidated Plaintiffs,

*versus*

PRESSMAN, INC.

Consolidated Plaintiff-Appellee,

2                Opinion of the Court                21-11019

SMITH MEDICAL PARTNERS, LLC,
Delaware limited liability company,
H.D. SMITH, LLC,
Delaware limited liability company,
JOHN DOES 1-5,

                                          Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:19-cv-01723-CEH-AEP

_____

_____

No. 21-11502

_____

DR. STEVEN ARKIN,
a Florida resident, individually and as the
personal representative of a class of
similarly-situated persons,
ANDERSON & WANCA,

                                          Plaintiffs-Appellants,

WILLIAM P. SAWYER,

M.D., individually and as the representative
of a class of similarly-situated persons, et al.,

                                        Consolidated Plaintiffs,

*versus*

PRESSMAN, INC.,

                                        Consolidated Plaintiff-Appellee,


SMITH MEDICAL PARTNERS, LLC,
Delaware limited liability company,
H.D. SMITH, LLC,
Delaware limited liability company,
JOHN DOES 1-5,

                                        Defendants-Appellees.


————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:19-cv-01723-CEH-AEP

————————————

Before NEWSOM, TJOFLAT, and ED CARNES, Circuit Judges.

TJOFLAT, Circuit Judge:

Dr. Steven Arkin and his counsel, Anderson + Wanca ("Wanca"), appeal the District Court's denial of their motion for Wanca to receive a portion of the attorneys' fees resulting from the settlement of a class action lawsuit brought under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227. Wanca, while not appointed as class counsel in this case, began the chain of litigation that resulted in the settlement below and so contends that it provided a substantial and independent benefit to the class justifying a portion of the attorneys' fees. While we do find that Wanca has shown it provided one substantial and independent benefit to the class, we affirm because Wanca's prioritization of its interests over the class's interests throughout the *Arkin* litigation forecloses the equitable relief Wanca seeks.

## I.

On September 15, 2017, Smith Medical Partners ("Smith") sent an unsolicited fax to Dr. Arkin, a Florida resident and medical doctor represented by Wanca at all times relevant to this appeal. On September 26, 2017, Dr. Arkin filed suit in the Middle District of Florida against Smith on behalf of a putative class of other persons or entities who allegedly received "unsolicited advertisements" by fax in violation of the TCPA ("*Arkin I*"). *See* 47 U.S.C. § 227(b)(1)(C) ("It shall be unlawful for any person within the United States . . . to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement."). The parties then engaged in a

discovery dispute which resulted in an order directing Smith to produce "1,324 fax campaigns and logs for [Dr. Arkin's] review" and directing Dr. Arkin to provide Smith with "his sampling of 20 fax campaigns." The District Court also ordered Dr. Arkin and Smith to participate in mediation. Following mediation negotiations, the parties reached a settlement agreement ("the *Arkin* Settlement").

The *Arkin* Settlement provided that Smith would create a $21 million common fund to pay verified claims against Smith; claimants would receive $493.32 for each fax number they had that received unsolicited advertisements from Smith.[1] Wanca would receive one-third of the $21 million common fund—$7 million—as a fee award for its services, subject to court approval.[2] As Eleventh Circuit precedent generally only allows district courts to award 25% of the common fund to class counsel as attorneys' fees,[3] Dr.

---

[1] The TCPA provides for $500 in statutory damages per *violation*, not per *fax number*. 47 U.S.C. § 227(b)(3)(B). The *Arkin* Settlement explicitly provided that each claimant would only be entitled to $493.32 per fax number that received an unsolicited advertisement from Smith, "irrespective of the number of faxes received."

[2] As Wanca claimed 671.95 billable hours in *Arkin I*, this would amount to a fee of $10,417.44 per billable hour.

[3] Since awards of up to 25% of the common fund are presumptively reasonable in this circuit, district courts must apply the twelve *Johnson* factors before approving a greater award to class counsel. *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1242 (11th Cir. 2011). The twelve *Johnson* factors are:

Arkin and Smith agreed to voluntarily dismiss *Arkin I* and refile the class action in the Nineteenth Judicial Circuit Court of Illinois, the Illinois state trial court for Lake County, Illinois. *See, e.g., Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1242 (11th Cir. 2011) (recognizing the 25% common fund award benchmark). Illinois precedent allows state trial courts to award one-third of the common fund as attorneys' fees in class actions. *Shaun Fauley, Sabon, Inc. v. Metro. Life Ins. Co.*, 52 N.E. 3d 427, 436, 440–442 (Ill. App. Ct. 2016) (approving a one-third common fund award to Wanca as reasonable). While Wanca would receive $7 million from the common fund regardless of the actual number of claimants, any money remaining in the common fund after paying Wanca's attorneys' fees and all claimants would revert to Smith.[4]    Additionally, the

> (1) the time and labor required; (2) the difficulty of the issues; (3) the skill required; (4) the preclusion of other employment by the attorney because he accepted the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 1242–43 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3, 103 S. Ct. 1933, 1938 n.3 (1983) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974))).

[4] The Supreme Court has approved the practice of basing attorneys' fees off the total possible amount recoverable by members of the class, not the total amount actually recovered, as the "right to share the harvest of the lawsuit

*Arkin* Settlement provided that any party could "terminate the settlement, for any reason or no reason at all, at any time prior to the Court's Final Approval Hearing." Should termination occur, the settlement agreement provided that the lawsuit would return to the Middle District of Florida as though the *Arkin* Settlement had never been made.

Pursuant to the *Arkin* Settlement agreement, Dr. Arkin filed a stipulation of dismissal under Fed. R. Civ. P. 41(a)(1)(A)(ii) in *Arkin I* in the Middle District of Florida on August 23, 2018. On the same day, Dr. Arkin had Wanca file a new putative class action ("*Arkin II*") in the Nineteenth Judicial Circuit. In so doing, the parties avoided by one day an order from the Middle District of Florida that would have required them to disclose the results of the mediation—and thus the terms of the *Arkin* Settlement—to the Middle District by August 24, 2018. *See Absolute Activist Value Master Fund Ltd. v. Devine*, 998 F.3d 1258, 1265 (11th Cir. 2021) (explaining that voluntary dismissals under Fed. R. Civ. P. 41(a)(1) are "effective immediately upon filing" (internal citation, quotation marks, and alteration omitted)).

The *Arkin II* court, likely sensing that something was amiss, ordered supplemental briefing on whether it was proper and appropriate under Illinois law to award one-third of the common

upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480, 100 S. Ct. 745, 750 (1980).

fund as attorneys' fees.  Wanca responded by citing over thirty Illinois state cases where the trial court awarded one-third of the common fund as attorneys' fees.  The *Arkin II* court then preliminary approved the terms of the *Arkin* Settlement on January 25, 2019.  Accordingly, Dr. Arkin and Smith sent out a notice of settlement to the *Arkin* class members, of which 1,633 filed claims.  As each claim was capped at $493.32, the *Arkin* Settlement class members would have received only $805,591.56 of the $21 million fund had the *Arkin* Settlement received final approval in *Arkin II*.  Wanca, again, would have received $7 million, and the remaining $13 million or so would have remained with Smith.

However, one of the class members notified in *Arkin II* was Pressman, Inc., a pharmaceutical and medical supply company represented by the law firm Bock, Hatch, Lewis & Oppenheim, LLC ("Bock").  Bock, like Wanca, has extensive experience in TCPA class actions, and the two law firms have tangled before.  *See, e.g.*, *Med. & Chiropractic Clinic, Inc. v. Oppenheim*, 981 F.3d 983 (11th Cir. 2020); *Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692 (11th Cir. 2017).  On March 25, 2019, Pressman (through Bock) filed a wide-ranging objection to the *Arkin* Settlement challenging, *inter alia*, the $493.32 cap, the decision to dismiss *Arkin I* from the Middle District of Florida in (what Bock described as) an apparent attempt to secure more attorneys' fees for Wanca, the provision allowing reversion of unclaimed funds to Smith, and the termination provision.  As a result of this objection, Smith exercised its right to terminate the settlement "rather than engage in

what promised to be a protracted and acrimonious objection process." Per the terms of the *Arkin* Settlement, *Arkin II* was dismissed from the Nineteenth Judicial Circuit in June 2019. Dr. Arkin then refiled the class action in the Middle District of Florida on July 16, 2019 ("*Arkin III*"). Pressman, meanwhile, filed a separate putative class action through Bock and against Smith in the Nineteenth Judicial Circuit, which Smith removed to the United States District Court for the Northern District of Illinois. The Northern District of Illinois transferred Pressman's suit to the Middle District of Florida on September 26, 2019, which then consolidated Pressman's suit with *Arkin III* on December 18, 2019.

When *Arkin II* fell apart in June 2019, Smith agreed to produce documents to Pressman and Bock for purposes of negotiation and settlement. Bock then spent months independently reviewing what the District Court described as "voluminous electronic files" while negotiating a settlement with Smith. The District Court later found that Bock "did not have access to the Wanca firm's work product" while negotiating with Smith. Following Bock's independent review of Smith's documents, Pressman and Smith filed a new proposed settlement agreement in *Arkin III* on February 18, 2020 ("the *Pressman* Settlement").

The *Pressman* Settlement was very different from the *Arkin* Settlement. For starters, it only provided for a $4.5 million common fund. However, this fund was non-reversionary, and each claimant was entitled to receive a *pro rata* share of the common fund. Additionally, class counsel could only receive up to 25% of

the common fund as a fee award, or $1.125 million. The *Pressman* Settlement also provided that each claim form submitted in the *Arkin* Settlement would be valid under the *Pressman* Settlement unless the *Arkin* claimant later submitted an opt-out request. And, unlike the *Arkin* Settlement, the *Pressman* Settlement could only be terminated if it was not approved by the District Court or too many class members opted out.

The District Court granted preliminary approval of the *Pressman* Settlement on June 23, 2020. The Settlement Administrator for the *Pressman* Settlement then began collecting claims forms on August 17, 2020, with over 2,900 ultimately being approved, including the 1,633 claims filed in the *Arkin* Settlement. No class member objected to the *Pressman* Settlement or requested exclusion. On February 25, 2021, the District Court granted final approval of the *Pressman* Settlement in *Arkin III*, appointed Bock as class counsel, and awarded Bock the full $1.125 million as attorneys' fees. Each claimant received approximately $1,100. Additionally, the District Court denied Dr. Arkin and Wanca's motion for a portion of the *Pressman* Settlement attorneys' fees, finding that Wanca had not conferred a substantial or independent benefit to the class justifying a portion of the fees. Dr. Arkin and Wanca appeal only the Court's denial of its motion for a portion of the *Pressman* Settlement fees.

## II.

This Court reviews a district court's decision to award attorneys' fees for abuse of discretion. *Johnson v. NPAS Sols., LLC*, 975

F.3d 1244, 1251 n.2 (11th Cir. 2020).  This "standard of review al-
lows us to closely scrutinize questions of law decided by the district
court in reaching the fee award."  *Id.* (quoting *Camden I Condo.*
*Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 770 (11th Cir. 1991)).  Further-
more, "[a] district court abuses its discretion if it applies an incor-
rect legal standard, follows improper procedures in [reaching its
decision], or makes findings of fact that are clearly erroneous."  *Id.*
(quoting *Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1282 (11th
Cir. 2011) (second alteration in original)).

## III.

"[A] lawyer who recovers a common fund for the benefit of
persons other than himself or his client is entitled to a reasona-
ble attorney's fee from the fund as a whole."  *In re Home Depot*
*Inc., Customer Data Sec. Breach Litig.*, 931 F.3d 1065, 1079 (11th
Cir. 2019) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478,
100 S. Ct. 745, 749 (1980)).  Common funds belong to the plaintiffs,
not to the defendant(s), and so plaintiffs' lawyers may receive pay-
ment from the common fund without violating the American
Rule.[5]  *Id.*  The key here is that only those lawyers who "recover[]

---

[5] Under the American Rule, "each party is traditionally responsible for its own
attorney's fees."  *Home Depot*, 913 F.3d at 1078.  We have recognized

> three exceptions to the American Rule: (1) when a statute
> grants courts the authority to direct the losing party to pay at-
> torney's fees; (2) when the parties agree in a contract that one
> party will pay attorney's fees; and (3) when a court orders one
> party to pay attorney's fees for acting in bad faith.

12                      Opinion of the Court                    21-11019

a common fund" for the plaintiffs are entitled to a portion of the common fund as a reasonable attorneys' fee. *Id.* This makes sense. Attorneys, like all other professionals, are paid for the services they provide their clients, and it would be foolish to force plaintiffs to pay lawyers whose work did not benefit them, especially in the absence of a contractual relationship. And in a class action, it is typically the court appointed class counsel that recovers the common fund for the class. *See* Fed. R. Civ. P. 23(g) (setting forth the duties and qualifications of class counsel).

But this does not mean that only class counsel may aid in recovering a common fund and so be entitled to attorneys' fees from the fund. Occasionally, other lawyers and law firms may provide valuable services to the class deserving of compensation. Therefore, Rule 23(h)

> provides a format for all awards of attorney fees and nontaxable costs in connection with a class action, not only the award to class counsel. In some situations, there may be a basis for making an award to other counsel whose work produced a beneficial result for the class, such as attorneys who acted for the class before certification but were not appointed class counsel, or attorneys who represented objectors to a proposed settlement under Rule 23(e) or to the fee motion of class counsel. Other situations in which fee

---

*Id.* As the common fund belongs to the plaintiffs, the American Rule does not apply because the plaintiffs are paying their own lawyers, much like in a contingency fee arrangement. *Id.* at 1079.

> awards are authorized by law or by agreement of the
> parties may exist.

Fed. R. Civ. P. 23(h) advisory committee's note to 2003 amendment.  Our sister circuits have also acknowledged that attorneys' fees may be awarded to non-class counsel in certain circumstances. *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 914 F.3d 623, 641 (9th Cir. 2019) ("Various courts, including our own, have determined that even non-class counsel can be entitled to attorneys' fees."); *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 194–98 (3d Cir. 2005) (allowing non-lead counsel to receive attorneys' fees in the private securities context if they provide a "substantial" and "independent" benefit to the class); *Victor v. Argent Classic Convertible Arbitrage Fund L.P.*, 623 F.3d 82, 86–87 (2d Cir. 2010) (following the Third Circuit's *Cendant* opinion); *Gottlieb v. Barry*, 43 F.3d 474, 488–89 (10th Cir. 1994) (reversing a district court's decision not to award attorneys' fees to non-class counsel when a special master determined that non-class counsel "conferred a benefit on the class").

Therefore, we hold that non-class counsel is generally entitled to a portion of a common fund recovered in a class action as attorneys' fees under Rule 23(h) if non-class counsel confers a substantial and independent benefit to the class that aids in the recovery or improvement of the common fund.  *See Cendant*, 404 F.3d at 194–98; *Victor*, 623 F.3d at 87.  A substantial benefit is one that "'creates, discovers, increases, or preserves' the class's ultimate recovery" of the common fund.  *Cendant*, 404 F.3d at 197 (alterations

omitted) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 820 n.39 (3d Cir. 1995)).  Examples of substantial benefits may include, but are not limited to, "significant factual investigations," "legal research on novel or innovative theories," actions that positively affect the "ultimate course of the litigation," or objections that aid in the class's recovery.  *Victor*, 623 F.3d at 87; Fed. R. Civ. P. 23(h) advisory committee's note to 2003 amendment.  An independent benefit, meanwhile, is a benefit class counsel did not provide the class during its representation that class counsel could not have easily duplicated.  *See Cendant*, 404 F.3d at 197 (holding that "attorneys who merely duplicated [class counsel's] work—however noble their intentions, however diligent their efforts, and however outstanding their product—will not be entitled to compensation.  Only those who confer an independent benefit upon the class will merit compensation").  And, of course, any substantial and independent benefit must also aid in the recovery or the improvement of the common fund for non-class counsel to have a claim on the fund.  *See Home Depot*, 931 F.3d at 1078.

Wanca argues that it provided several substantial and independent benefits to the common fund because it "identified, filed, and litigated" the class action and because 1,633 of the *Pressman* Settlement claimants filed their claims under the *Arkin* Settlement.  We partially agree.

First, the mere fact that Wanca devoted substantial time and effort to litigating this class action does not entitle Wanca to

attorneys' fees.  Simply put, most of the 671.95 hours Wanca spent litigating *Arkin I* and *II* did not aid in the recovery or improvement of the common fund obtained under the *Pressman* Settlement in *Arkin III*.  This is because the settlement Wanca negotiated with Smith was fundamentally flawed.  As the District Court put it:

> [D]espite the Wanca firm's representations as to the amount of work the firm performed, the settlement failed because Defendants were able to and did cancel it.  Critically, the settlement agreement that the Wanca firm negotiated with Defendants allowed for a right of cancellation for any reason, including if there were too many claims.  The Court fails to see how such agreement provided a substantial benefit to the class members.

Effort spent in obtaining a failed settlement agreement by non-class counsel simply is not compensable unless it directly aids in the recovery or improvement of the common fund that was actually obtained.  And the District Court did not clearly err by finding that Bock did not have access to Wanca's work product when Bock negotiated the *Pressman* Settlement.  Insofar as Wanca argues that it is entitled to attorneys' fees merely for expending time and effort litigating the class action or pursuing the *Arkin* Settlement, it is incorrect.  *See Cendant*, 404 F.3d at 197 ("We emphasize that, in determining who is entitled to attorneys' fees . . ., the court's only consideration must be whether or not the attorney's work provided benefits to the class.").

While most of the work Wanca performed pursuing the *Arkin* Settlement did not substantially benefit the class or aid in the recovery or improvement of the *Pressman* Settlement common fund, its efforts in identifying 1,633 class members who ultimately recovered under the *Pressman* Settlement are an exception. In some circumstances, identifying class members entitled to recovery may well provide a substantial benefit to the class and improve the common fund by ensuring that more class members ultimately recover.[6] The problem here, though, is that Wanca's work in identifying the 1,633 claimants did not provide the class with an independent benefit. Wanca identified the 1,633 claimants in the *Arkin* Settlement using documents provided by Smith. Bock independently reviewed Smith's documents and found the same class members that Wanca did. While it is true that Bock did not require the 1,633 *Arkin* claimants to file new claim forms in the *Pressman* Settlement, it easily could have. Wanca is not entitled to attorneys' fees for performing work that Bock could easily have duplicated and did not only for the convenience of the class members.

---

[6] Of course, for individual class members receiving a *pro rata* share of a common fund, additional claimants decrease the amount each claimant individually receives. However, we view non-class counsel's actions from the perspective of whether they benefit the class, not necessarily individual class members, and increasing the amount of class members who recover from a common fund may provide a substantial benefit and improve the common fund by ensuring that more class members entitled to recovery receive recovery.

Wanca also argues that it provided a substantial benefit to the class by filing a class action in September 2017, almost two years before Bock filed.  We agree with Wanca that filing a class action long before any other lawyer or law firm can provide a substantial benefit to the class by preventing class members from falling outside the statute of limitations.  While the Third Circuit in *Cendant* and the Second Circuit in *Victor* placed little value on the mere filing of class action complaints, they were analyzing securities class actions conducted under the framework of the Private Securities Litigation Reform Act.  *See Cendant*, 404 F.3d at 195–96; *Victor*, 623 F.3d at 86–87.  As those circuits explained, "[s]ecurities litigation is often an entrepreneurial exercise in which multiple attorneys file complaints in the hopes of ultimately being appointed lead counsel."  *Victor*, 623 F.3d at 86 (citing *Cendant*, 404 F.3d at 196).  In such cases, there is little concern that large numbers of the class may become barred by the statute of limitations unless an attorney files quickly.  When the statute of limitations is a concern, non-class counsel may provide a substantial benefit to the class merely by preserving a substantial portion of the class's claims through early filing.

But that does not mean Wanca provided a substantial benefit to the class by being the first to file here.  While Wanca did file two years before Bock, it squandered any benefit that earlier filing may have provided the class by dismissing *Arkin I* to refile in Illinois, then dismissing *Arkin II* to return to the Middle District of Florida.  So, the relevant filing date for Wanca is when it refiled in

federal court after *Arkin II*, not when it filed *Arkin I*. As the District Court noted, Wanca's actions "potentially impaired 75% of the faxes at issue."

Nevertheless, Wanca did provide a substantial and independent benefit to the class in one way: Wanca identified Smith's TCPA violations and the potential for a class action. As the Third Circuit observed, "attorneys who alone discover grounds for a suit, based on their own investigation rather than on public reports, legitimately create a benefit for the class." *Cendant*, 404 F.3d at 196–97. There is no indication that Pressman or Bock were aware of Smith's faxes or the potential for a class action until Wanca notified them in *Arkin II*. But for Wanca's identification of the class action, there may well have been no class action at all. Wanca's identification of the class action thus constituted a substantial and independent benefit that aided in the recovery of the common fund. Ordinarily, this would entitle Wanca to a portion of the common fund as attorneys' fees.

But this is not an ordinary case. Here, the record clearly shows that Wanca subordinated the interests of the class to its own interests throughout the *Arkin* litigation. There is no other rational explanation for the terms of the *Arkin* Settlement, which provided for a huge payout for Wanca with little to the class, while giving Smith the right to terminate the settlement agreement for any reason, including if the number of claimants grew too large. Further, the *Arkin* Settlement's requirement that the class action be refiled in Illinois (and before the Middle District of Florida had a chance to

scrutinize the agreement) appears to exist so Wanca could receive one-third of the (nominally) $21 million common fund as attorneys' fees instead of only receiving 25%. Had the *Arkin* Settlement been approved in Illinois state court, Wanca would have received $1.75 million more in attorneys' fees than it likely would have had the settlement agreement been approved in the Middle District of Florida. The difference between what Wanca would have received in Illinois versus the Middle District of Florida is $625,000 more than Bock received as attorneys' fees under the *Pressman* Settlement. Indeed, the increase in attorneys' fees from merely refiling in Illinois state court is over double what the *class* would have received under the *Arkin* Settlement.

Wanca, of course, denies that it refiled in Illinois state court to receive a greater fee award. Instead, Wanca contends that it refiled in Illinois state court for the "convenience of the parties," as both Wanca and Smith were based in Illinois and because Wanca had experience with pursuing class actions in Illinois state court. Oral Arg. at 3:18–3:43. This rationale simply does not explain the terms of the *Arkin* Settlement. But let's assume for the sake of the argument that Wanca really did refile in Illinois only out of convenience, and that the *Arkin* Settlement's provisions providing for the refiling and the one-third attorneys' fees award (by happenstance, the apparent benchmark award under Illinois law) really were a happy coincidence. Even still, Wanca's stated reasons for the refiling establish that the refiling was undertaken for the benefit of Wanca (and Smith), not for the benefit of the class. After all, Dr.

Arkin, Wanca's nominal client charged with overseeing the class action on behalf of the class,[7] was a Florida resident, not an Illinois resident, and we fail to see how the refiling in Illinois was convenient for him, an actual party (unlike Wanca).  More troubling is how this refiling for "convenience" put many of the class's claims at serious risk by potentially impairing 75% of the faxes at issue under the statute of limitations, as *Arkin II* was filed in August 2018, almost one year after *Arkin I* was filed in September 2017.  *See* 28 U.S.C. § 1658(a) (providing for a four-year statute of limitations in federal actions).  If it truly had been more convenient for the parties to litigate in Illinois, they could have jointly moved for the venue to be transferred to an Illinois district court under 28 U.S.C. § 1404(a) and avoided the statute of limitations problem.[8]  In fact, under Seventh Circuit precedent, Wanca could still have received one-third of the common fund as attorneys' fees, as the Seventh Circuit bases common fund awards solely "on relevant market rates and the *ex ante* risk of nonpayment."[9]  *Williams v. Rohm &*

---

[7] *See* Fed. R. Civ. P. 23(a)(4) ("One or more members of a class may sue or be sued as representative parties on behalf of all members only if . . . the representative parties will fairly and adequately protect the interests of the class.").

[8] Wanca also could have initiated the litigation in Illinois state or federal court if it truly was that concerned with convenience.  Smith is apparently based in Illinois, so there would have been no jurisdictional or venue issues.

[9] Of course, this would have required Wanca to prove that it deserved a one-third attorneys' fees award, rather than simply receiving a one-third award as

*Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011) (citing *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718–19 (7th Cir. 2001)). Subordinating the interests of the class for the convenience of the attorneys is as much an ethical violation as selling the class out for attorneys' fees. So, we agree with the District Court that "[r]egardless of the reason, the dismissal and re-filing does not appear to have been a decision made in the interest or for the benefit of the class members."

The *Arkin* Settlement's reversion and termination provisions are likewise inexplicable. Together, these two provisions ensured that Smith would never have to pay anything close to the $21 million nominally provided for by the settlement agreement, as Smith would simply terminate the settlement had too many claimants filed. Wanca, being a sophisticated TCPA class action law firm, of course would have known this. The $21 million number was therefore never anything more than a legal fiction created to maximize Wanca's attorneys' fees. Further, these provisions provided a disincentive for Wanca to seek out class members for recovery under the *Arkin* Settlement because if too many of them filed claims, Smith could cancel the settlement and Wanca would lose out altogether on its inflated attorneys' fees. No wonder the *Arkin* Settlement fell apart after a single objection.

---

a benchmark in Illinois state court like Wanca's supplemental filing in *Arkin II* suggested.

"Historically, the rationale entitling counsel to a percentage of the common fund derives from the equitable power of the courts under the doctrines of quantum meruit." *Camden*, 946 F.2d at 771 (citing *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 5 S. Ct. 387 (1885)). But "he who comes into equity must come with clean hands," and a party (or law firm) "tainted with inequitableness or bad faith" "closes the doors of a court of equity" with its misconduct. *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814, 65 S. Ct. 993, 997 (1945). The record clearly shows that Wanca put the class at serious risk of harm with the *Arkin* Settlement for the sake of inflated attorneys' fees and convenience. Wanca has thus closed the doors of equity on its claim for attorneys' fees under the *Pressman* Settlement. Accordingly, we hold that the District Court did not abuse its discretion by denying Wanca attorneys' fees.

## IV.

For the reasons stated above, we affirm the District Court's denial of Wanca's motion for attorneys' fees.

**AFFIRMED.**